**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:22-CR-00426 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT E. BOONE, *et al.* | : | Judge Jennifer P. Wilson |

**<u>MEMORANDUM</u>**

Defendants collectively stand accused of six counts of major fraud against

the United States, in violation of 18 U.S.C. § 1031, and two counts of conspiracy

to commit major fraud against the United States, in violation of 18 U.S.C. § 371.

Presently before the court is a motion to dismiss the indictment.  (Doc. 124.)

Defendants argue the charges against them are time-barred.  To resolve this

motion, the court must determine whether the Wartime Suspension of Limitations

Act ("WSLA"), 18 U.S.C. § 3287, tolled the applicable limitations periods for the

instant offenses.  The court finds that the WSLA did so.  Accordingly, the court

will deny Defendants' motion.

**BACKGROUND**

The alleged crimes center around the U.S. Small Business Administration's

8(a) Business Development Program ("8(a) Program") and Service-Disabled

Veteran Owned Small Business Program ("SDVOSB Program").  These programs

offer federal contracting opportunities to "socially and economically disadvantaged

1

entrepreneurs" and veteran-owned businesses, respectively.  (Doc. 1, ¶¶ 11, 33.)

Defendants Scott Boone ("Boone"), Daniel McGuire ("McGuire"), and Thomas

Lauer ("Lauer") are alleged to have fraudulently obtained one contract through the

SDVOSB Program and four contracts through the 8(a) Program.  To obtain the

8(a) Program contracts, Boone, McGuire, and Lauer allegedly conspired with

Defendant Rebecca Davis, who, with her business Elstner Construction, was a

legitimate participant in the 8(a) Program, unlike the other Defendants.  (*Id.* ¶¶ 10,

40, 42.)  The details of Defendants' alleged schemes are not important for the

present motion.  Suffice it to say, the Government alleges that Defendants

conspired to obtain and in fact obtained the contracts at issue through fraudulent

schemes.

What is important for the present motion is when these crimes allegedly

occurred.  Counts one through six of the indictment concern the 8(a) Program

contracts, which were issued between 2007 and 2009.  (*Id.* ¶¶ 1–69.)  Count one

alleges a conspiracy to commit major fraud against the United States that occurred

"[f]rom on or about 2003 until on or about 2014."  (*Id.* ¶ 39.)  Counts two through

six respectively allege major fraud against the United States for each obtained

contract.  (*Id.* ¶¶ 68–69.)  These four offenses allegedly occurred "[f]rom on or

about 2007 until on or about 2014."  (*Id.* ¶ 69.)  Counts seven and eight concern

the SDVOSB Program contract, which was issued in 2013.  (*Id.* ¶ 88.)  Count

seven alleges a conspiracy to commit major fraud against the United States that occurred "[f]rom on or about 2013 until on or about 2019." (*Id.* ¶ 77.) Count eight alleges the substantive major fraud offense, which allegedly occurred during the same time frame. (*Id.* ¶ 88.)

The grand jury returned the instant indictment on December 14, 2022. Defendants moved to dismiss the indictment as time-barred on May 17, 2025.[1] (Doc. 124.) That motion is now ripe for review. (*See* Docs. 125, 150, 156.)

## DISCUSSION

### A. Applicable Statutes of Limitations

The parties agree what the applicable limitations periods are for the charged offenses. The conspiracy counts—charged under 18 U.S.C. § 371—are subject to a 5-year limitations period. 18 U.S.C. § 3282(a). The substantive major fraud counts—charged under 18 U.S.C. § 1031— are subject to a 7-year limitations period. 18 U.S.C. § 1031(f).

The parties also agree that the limitations periods have expired with respect to counts one through six. (*See* Doc. 125, pp. 6–7; Doc. 150, p. 1.)[2] The indictment alleges that Defendants completed those crimes by 2014, approximately eight years before the indictment was returned. (Doc. 1, ¶¶ 39, 69.) Accordingly,

---

[1] Defendants filed several other pre-trial motions at around the same time. (Docs. 114, 116, 117, 119, 121.) Those motions will be separately resolved in due course.

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

counts one through six can only proceed if the WSLA tolled the limitations periods.

The parties disagree whether counts seven and eight are timely. The indictment alleges that those crimes occurred until about 2019. (Doc. 1, ¶¶ 77, 88.) Defendants argue that those alleged offense would have been complete in 2013 upon execution of the contract at issue. (Doc. 156, pp. 17–21.) The court need not resolve this disagreement, however, because the WSLA tolled the limitations periods for all eight counts.

## B. Application of the WSLA

The WSLA traces its origins back to the aftermath of World War I. *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 656 (2015). Following that conflict, in 1921, Congress extended the limitations period for crimes involving "defrauding or attempts to defraud the United States" due to a "concern[] about war-related frauds." *Id.* (quoting Act of Nov. 17, 1921, ch. 124, 42 Stat. 220). That suspension statute remained in effect until 1927. *Bridges v. United States*, 346 U.S. 209, 217 (1953). In 1942, Congress revived "substantially the same exception to the general statute of limitations" following the United States's entrance into World War II. *Id.*; *accord* Act of Aug. 24, 1942, ch. 555, 56 Stat. 747–48. This 1942 statute evolved into the WSLA by 1948. *See Kellogg Brown & Root Servs.*, 575 U.S. at 657.

Amended in 2008, the WSLA now reads in relevant part:

When the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b)), the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress.

18 U.S.C. § 3287.

The court need not ponder long whether either of the WSLA's triggering or terminating conditions have occurred. Congress authorized the use of military force in 2001 following the September 11 attacks and in 2002 for military operations in Iraq. Authorization for Use of Military Force Against Iraq Resolution of 2002, Pub. L. 107-243, 116 Stat. 1498 (2002); Authorization for Use of Military Force, Pub. L. 107-40, 115 Stat. 224 (2001). The Government contends that these authorizations triggered the WSLA here and that the corresponding hostilities have not been terminated by a method prescribed by the WSLA. (Doc. 150, p. 5.) Defendants make no arguments to the contrary. In any

5

event, the Government is correct.  *See United States v. Kousisis*, No. 18-CR-130,

2019 WL 4126484, at \*16 (E.D. Pa. June 17, 2019), *aff'd sub nom. United States v.*

*Frangos*, 821 F. App'x 81 (3d Cir. 2020), and *aff'd*, 66 F.4th 406 (3d Cir. 2023),

*reh'g granted and opinion vacated*, 81 F.4th 1260 (3d Cir. 2023), and *aff'd*, 82

F.4th 230 (3d Cir. 2023), *aff'd sub nom. Kousisis v. United States*, 605 U.S. ___,

145 S. Ct. 1382 (2025) ("Courts have broadly accepted both that the

[Authorizations for Use of Military Force in 2001 and 2002] triggered the WSLA,

and that hostilities have not ended by Presidential proclamation or joint resolution

of Congress as called for by the WSLA . . . .")

The disputed issue is whether the instant offenses are applicable offenses

under the WSLA.  More specifically, the court must determine whether the

offenses fall within the scope of the WSLA's first subclause, which applies to "any

offenses . . . involving fraud or attempted fraud against the United States or any

agency thereof in any manner, whether by conspiracy or not" (the "Fraud

Subclause").  18 U.S.C. § 3287.  That is the only subclause upon which the

Government relies.[3]

---

[3] In a footnote, the Government makes a passing argument as to why the charged crimes also fall within the scope of the third subclause.  (Doc. 150, p. 6 n.3.)  That argument is waived.  *See John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.")

The Supreme Court has cabined the Fraud Subclause's scope to offenses of which an "essential ingredient" is "defrauding or attempting to defraud the United States" in a "pecuniary manner or in a manner concerning property." *Bridges*, 346 U.S. at 221; *accord United States v. Grainger*, 346 U.S. 235, 240–41 (1953). This is how the Supreme Court interpreted the WSLA's pre-1942 predecessor. *See Bridges*, 346 U.S. at 221. In applying this standard, *Bridges* and *Grainger* further clarified the Fraud Subclause's scope.

Bridges was charged with making a false material statement under oath during a naturalization hearing in violation of the Nationality Act of 1940. 346 U.S. at 213. He allegedly lied about not being a member of the Communist Party. *Id.* The two alleged conspirators who corroborated this lie at the hearing were also charged under the same act for aiding Bridges to obtain a naturalization certificate to which he was not entitled. *Id.* at 214. All three defendants were charged with conspiracy to defraud the United States under 18 U.S.C. § 371. *Id.* at 212–13. The Court held that the WSLA did not toll the limitations periods for any of these offenses. *Id.* at 221. It reasoned that none of the charges depended on proof that the defendants had committed fraud in a "pecuniary manner or a manner involving property." *Id.* at 221–24. For instance, the substantive false statement offense categorically fell outside the Fraud Subclause's scope, because the offense requires

7

no proof that a defendant engaged in a pecuniary fraud.[4]  *Id.* at 222.  Indeed, the

*Bridges* Court made clear that even if Bridges had committed the substantive false

statement offense "in a pecuniary transaction involving a financial loss to the

Government, that fact, alone," would be insufficient for the WSLA to apply.  *Id.*

Grainger had a different outcome.  In that case, the defendant fraudulently

submitted false claims for payment to the Commodity Credit Corporation in

violation of 18 U.S.C. § 287 (1948).  *Grainger*, 346 U.S. at 237–38.  The WSLA

applied to that offense, because fraud was "an essential ingredient" of the charged

crime and such fraud was "of a pecuniary nature."  *Id.* at 240–41.  In other words,

there could be no  offense under § 287 inherently without some element of

pecuniary fraud.  *See id.* at 242–43.[5]

Bridges and *Grainger* pave a straightforward analytical path.  The factual

allegations contained in the indictment—*i.e.*, that Defendants conspired to execute

and executed a fraudulent scheme to obtain money and property—do not answer

the question of whether the WSLA applies here.  Instead, the court must consider

---

[4] The court uses the phrase "pecuniary fraud" throughout the opinion as shorthand for fraud committed in a "pecuniary manner of a manner involving property."  *Bridges*, 346 U.S. at 221.

[5] The contemporaneous language of that statute reads, in relevant part, "[w]hoever shall . . . present . . . for payment or approval, to . . . any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States . . . or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent . . . shall be fined not more than $10,000 or imprisoned not more than ten years, or both."  *Grainger*, 346 U.S. at 241–42 (quoting 18 U.S.C. § 287 (1948)).

for each charged offense whether an essential ingredient of that offense is defrauding the United States in a pecuniary manner.  The court considers each offense in turn.

### 1.  Major Fraud Counts

The court starts with the substantive major-fraud offense.  That offense's charging statute states:

> (a) Whoever knowingly executes, or attempts to execute, any scheme or artifice with the intent--
>
> (1) to defraud the United States; or
>
> (2) to obtain money or property by means of false or fraudulent pretenses, representations, or promises,
>
> in any grant, contract, subcontract, subsidy, loan, guarantee, insurance, or other form of Federal assistance . . . if the value of such grant, contract, subcontract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, or any constituent part thereof, is $1,000,000 or more shall . . . be fined not more than $1,000,000, or imprisoned not more than 10 years, or both.

18 U.S.C. § 1031.

This statutory language leaves no room for doubt.  Defrauding the United States in a pecuniary manner is an essential ingredient of this offense.  Two other courts have come to the same conclusion, holding that a § 1031 offense fell within the Fraud Subclause's scope.  *United States v. Doost*, No. 1:17-CR-00109, 2019

WL 1560114, at *12 (D.D.C. Apr. 10, 2019), *aff'd*, 3 F.4th 432 (D.C. Cir. 2021)[6];

*United States v. Verclas*, No. Crim. No. 18-160, 2019 WL 95148, at *7–8 (D. Md.

Jan. 3, 2019); *see also United States v. Merkel*, 357 F. Supp. 3d 1060, 1063–66 (D.

Or. 2019) (finding WSLA tolled limitations period of § 1031 offense after

concluding that the 2008 amendment applied retroactively to the defendant's

charged offense).  Defendants point to no authority holding the opposite.

Defendants believe, however, that the Supreme Court's recent decision in

*Kousisis* is a game changer.  *Kousisis* held that a defendant may be convicted under

the wire fraud statute, 18 U.S.C. §1343, even when he causes no economic loss to

the victim.  145 S. Ct. at 1391.  The defendant in *Kousisis* managed an industrial-

painting company, which obtained two lucrative painting contracts from the

Pennsylvania Department of Transportation ("PennDOT") that were largely funded

by federal grants.  *Id.* at 1388–89.  Pursuant to federal regulations governing such

grant recipients, PennDOT required bidders for the contract to "commit to

subcontracting a percentage of the total contract amount . . . to a disadvantaged

business."  *Id.* at 1389.  The defendant and the company accordingly promised to

---

[6] The *Doost* court's ruling came in the context of a post-trial request for acquittal or a new trial for, among other reasons, ineffective assistance of counsel.  2019 WL 1560114, at *1.  The defendant claimed that most of his charges were time-barred and faulted his previous counsel for not making that argument.  *Id.* at *11.  The court found no prejudice to the defendant with respect to the major-fraud offense, because the WSLA's Fraud Subclause tolled that offense's limitations period.  *Id.* at *12.  The defendant did not challenge this determination on appeal.  *Doost*, 3 F.4th at 442.

buy a certain amount of their supplies from a prequalified disadvantaged business.

*Id.*  But, they never followed through on their promise.  Rather, the company and

the defendant executed a scheme that made it falsely appear that they were buying

supplies from the disadvantaged business.  *Id.*  This scheme not only contradicted

prior representations made to PennDOT, but also violated federal regulations.  *Id.*

(citing 49 C.F.R. §26.55(c)).

Notwithstanding this deceit, the *Kousisis* defendant argued he could not be

convicted of wire fraud since PennDOT, who was satisfied with the company's

work, "received the full economic benefit of its bargain."  *Id.* at 1389–90.  The

Court rejected that position, explaining that "[t]he fraudulent-inducement theory is

consistent with both the text of the wire fraud statute and [the Court's] precedent

interpreting it."  *Id.* at 1391.

Defendants argue *Kousisis's* holding applies with equal force to the major

fraud statue such that major fraud does not require proof of economic loss.[7]  (Doc.

156, p. 7.)  Relying on *Bridges*, Defendants argue that without such an economic

loss requirement, major fraud cannot be in "the category of pecuniary and other

property frauds to which WSLA's fraud clause . . . applies."  (*Id.*)

---

[7] The Government seemingly agrees.  (*See* Doc. 150, p. 10.)  The court will assume, without deciding, that *Kousisis* controls the interpretation of § 1031 for purposes of resolving this motion.

Defendants read too much into *Bridges*. Nowhere in that case did the Court explicitly state that only fraud offenses involving pecuniary loss fall within the ambit of the Fraud Subclause. Again, *Bridges* instructs that the Fraud Subclause applies only when (1) "defrauding or attempting to defraud the United States is an essential ingredient of the offense charged" and (2) the offense involves "defrauding . . . the United States in any pecuniary manner or in a manner concerning property." 346 U.S. at 221. Defendants seem to argue that implicit in these two conditions is a pecuniary-loss requirement.

In support of this argument, they point to the legislative history that informed the *Bridges* Court's interpretation of the Fraud Subclause. (Doc. 156, pp. 9–10 (citing *Bridges*, 346 U.S. at 218–19 n.17 & n.18).) In analyzing the 1948 WSLA, the Court considered legislative materials that shed light on Congress's purpose in passing the 1942 and 1921 predecessors to the WSLA. *Id.* at 216–19. *Bridges* explained that Congress aimed the 1921 statute "at the pecuniary frauds growing out of war contracts" due to its "concern[] with the exceptional opportunities to defraud the United States that were inherent in its gigantic and hastily organized procurement program." *Id.* at 218. Congress's goal, ultimately, was "to help safeguard the treasury from such frauds." *Id.* The same considerations animated Congress to pass the 1942 statute. *Id.* at 219. This legislative history convinced the *Bridges* Court to construe the 1948 WSLA's fraud

subclause as limited to fraud offenses of "a pecuniary nature or of a nature

concerning property." *See id.* at 216.  Defendants seemingly argue that the Court's

reliance on this legislative history suggests that what the Court really meant was

that the Fraud Subclause is limited to fraud offenses that cause a pecuniary *loss*.

The court is unpersuaded for three reasons.  First, Defendants cite no case

that understands or applies *Bridges* so narrowly.

Second, Defendants' narrow understanding of *Bridges* is incompatible with

the Fraud Subclause's text.  It applies to "offenses . . . involving fraud or attempted

fraud against the United States or any agency thereof in any manner, whether by

conspiracy or not."  18 U.S.C. § 3287.  For Defendants' position to be correct, the

word "fraud" must be interpreted to mean an offense that causes pecuniary loss.

*Kousisis* forecloses such an interpretation.  As that case noted, the Supreme Court

"ha[s] long interpreted the statutory term 'fraud' (and its variations) . . .  by

reference to its common-law pedigree."  *Kousisis*, 145 S. Ct. at 1392 (citing *Neder*

*v. United States*, 527 U.S. 1, 21–22 (1999), and *Universal Health Servs., Inc. v.*

*United States ex rel. Escobar*, 579 U.S. 176, 187 (2016)).  Looking to that

pedigree,  *Kousisis* rejected the notion that economic "loss was 'widely accepted'

as a component of common-law fraud."  *Id.*   Given this, it would make little sense

to read *Bridges* as implicitly reading a pecuniary-loss requirement into the Fraud

Subclause.  Doing so would create a needless conflict between *Bridges* and

*Kousisis*, which are consistent otherwise.

Finally, the legislative materials quoted in *Bridges* do not suggest that

Congress was concerned only with fraud that caused pecuniary loss when it passed

the WSLA or its predecessors.  Those materials simply contemplate limitation-

suspending statutes directed at frauds of a pecuniary nature generally.  *Bridges*,

346 U.S. at 218–19 n.17 & n.18.  If anything, narrowly interpreting the Fraud

Subclause as Defendants do would undermine the apparent goal of the legislation

by exempting many types of fraud offenses that do not necessarily involve

pecuniary loss.  Indeed, it is not clear to what federal fraud statutes the Fraud

Subclause would still apply under Defendants' theory following *Kousisis*.  At the

very least, Defendants' position would exempt from the Fraud Subclause *any* wire

fraud or major fraud committed against the United States.  That outcome simply

does not align with what the *Bridges* Court saw as the WSLA's purpose.

For these reasons, the court does not read *Bridges* as limiting the scope of

the Fraud Subclause to fraud offenses that cause pecuniary loss to the United

States.  Rather, the court will apply *Bridges's* plain dictate: An offense is subject to

the Fraud Subclause when an essential ingredient of the offense is a pecuniary

fraud against the United States.  346 U.S. at 221.  Pecuniary fraud against the

United States is an essential ingredient of major fraud under § 1031, because the

14

language of § 1031 plainly limits the offense to frauds in the procurement of high-value government contracts, grants, or assistance. 18 U.S.C. § 1031. Defendants make no other argument to the contrary. Therefore, the WSLA's Fraud Subclause tolled the limitations period for the counts charging this offense, and Defendants' motion to dismiss will be denied with respect to these counts.

### 2. Conspiracy Counts

The court now considers the WSLA's applicability to the conspiracy counts. The indictment charges Defendants with conspiracy to commit major fraud. (Doc. 1, ¶¶ 1–67, 70–86.) The charging statute reads:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. 371. Defendants argue that the WSLA cannot apply to the conspiracy counts here because § 371 is not limited to conspiracies that cause pecuniary loss. (Doc. 156, p. 13.)

Defendant's argument suffers from two fatal flaws. First, the Fraud Subclause does not only apply to offenses that cause pecuniary loss for the reasons explained above. Therefore, it is immaterial whether or not § 371 is limited to offenses that cause pecuniary loss.

Second, Defendants would have the court analyze the applicability of the

WSLA to § 371 without considering the substantive offense that was the object of

the charged conspiracy.  To Defendants, the fact that § 371 covers fraud offenses

not involving pecuniary loss, or pecuniary fraud at all, categorically takes the entire

statute out of the Fraud Subclause's scope.  (*See id.*)  Yet, Defendants' approach

fails to acknowledge the well settled principle that the elements of conspiracy are

defined, in part, by the underlying offense.  *See United States v. Brodie*, 403 F.3d

123, 134 (3d Cir. 2005) (listing "intent to commit the underlying offense" as one

element of a § 371 offense); *United States v. Am. Inv'rs of Pittsburgh, Inc.*, 879

F.2d 1087, 1100 (3d Cir. 1989) ("In order to prove a conspiracy, the government

must show an agreement to commit an unlawful act combined with intent to

commit the underlying offense.")  *Bridges* recognized this and expressly

considered what was necessary to prove the underlying offense when analyzing the

WSLA's applicability to the defendants' § 371 charge.  *Bridges*, 346 U.S. at 223–

24.  Since an essential ingredient of the substantive offense was not pecuniary

fraud against the United States, the WSLA did not apply to the § 371 charge

against those defendants.  *Id.*

The opposite is true in this case.  As noted above, an essential ingredient of

major fraud is a pecuniary fraud against the United States.  Therefore, the WSLA's

16

fraud clause tolled the limitations period for the counts charging this offense, and

Defendants' motion to dismiss will be denied with respect to these counts.

## CONCLUSION

For the reasons stated herein, the WSLA tolled the limitations period for the

charges against Defendants.  Therefore, the court will deny Defendants' motion to

dismiss the indictment as time-barred.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: September 24, 2025