**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:22-CR-00426 |
| | : | |
| v. | : | |
| | : | |
| SCOTT E. BOONE, *et al.* | : | Judge Jennifer P. Wilson |

# ORDER

The Government has moved for this court to investigate whether a potential or actual conflict of interest exists among Defendants' counsel on the suspicion that one Defendant may be paying the legal expenses of the others.[1] The court will decline to do so, because a mere suspicion alone is insufficient to warrant such an inquiry. Therefore, the government's motion is denied.

## BACKGROUND

The three Defendants in this matter are all represented by different counsel from different law firms. Defendant Scott Boone is represented by Lisa A. Mathewson of Mathewson Law LLC and Mark Cedrone of Saxton & Stump LLC.[2]

[1] The Government styled its motion as a "motion for conflict of interest inquiry," yet confusingly filed it on the docket as a "motion for disclosure of fee-sharing arrangements." (Doc. 263.)

[2] Attorney Mathewson entered her appearance for Scott Boone on January 12, 2023. (Doc. 24.) Internal court records indicate that she was added on the docket as an attorney for both Daniel McGuire and Thomas Lauer on January 6, 2026, despite never having entered an appearance for these individuals. This appears to have been an error. Attorney Mathewson confirmed in a docketed letter that she, in fact, only represents Scott Boone in this matter. (Doc. 351.) The Clerk of Court is directed to correct the docket to reflect the proper scope of Attorney Mathewson's representation in this matter.

(Docs. 24 & 84.) Defendant Daniel McGuire is represented by Efrem M. Grail and Julia Marie Gitleman of The Grail Law Firm. (Docs. 10 & 13.) Defendant Thomas Lauer is represented by Juliana Tindall of Comber Miller LLC.[3] (Doc. 349.) This representation arrangement does not facially raise conflict-of-interest concerns.

Nevertheless, the Government felt compelled to seek assurances that no fee-sharing arrangement existed between Defendants that could give rise to a conflict. Specifically, the Government asked the Defendants to disclose voluntarily the following:

> any fee agreements that have been entered either between defendants or between any individual defendant and any third party, including Bon Secour Management. For the avoidance of doubt, this request would extend to any arrangement by which either one defendant or any combination of defendants is paying for legal services offered to another defendant, to defendants collectively, to Bon Secour Management, or to any individual who could be viewed as a witness during any proceedings in this case.

(Doc. 264, p. 3.)[4] Defense counsel declined to do so. They claimed that Pennsylvania Rule of Professional Conduct 1.6 ("Rule 1.6") prohibited them from sharing such information. (*Id.* at 4; *see* Doc. 271, pp. 10–11.)

[3] Until today, Lauer was represented by Stephen Wesley Gorman, Attorney Tindall's colleague from Comber Miller LLC. (*See* Docs. 35 & 353.)

[4] For ease of reference, the court uses the page numbers from the CM/ECF header.

The Government then moved this court to compel Defendants to share the information. The Government proffers no other facts that suggest a conflict of interest exists now or may in the future. Indeed, the only factual basis for the Government's request is defense counsel's invocation of Rule 1.6. (*See* Doc. 279, p. 4.) Notwithstanding this minimal basis, the Government takes the position that, "there is no reason not to make this inquiry." (Doc. 264, p. 10.)

## LEGAL STANDARD

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right "to have the Assistance of Counsel for his defence," U.S. Const. amend. VI, and "effective assistance of counsel" at that, *Garza v. Idaho*, 586 U.S. 232, 237 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Conflicts of interest pose a threat to this fundamental constitutional right. *See Holloway v. Arkansas*, 435 U.S. 475, 490 (1978) ("The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters."). This is why the right to counsel includes the "correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981).

Courts have a duty to ensure conflicts of interest do not undermine the right to counsel when they are "confronted with and alerted to [such] possible conflicts." *Wheat v. United States*, 486 U.S. 153, 160 (1988); *accord United States v. Savage*,

85 F.4th 102, 116 (3d Cir. 2023). When so alerted, courts "must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Wheat*, 486 U.S. at 160. This duty is implicated "only when 'the trial court knows or reasonably should know that a particular conflict exists," *Mickens v. Taylor*, 535 U.S. 162, 168 (2002) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980)), not when a court is only "aware of a vague, unspecified possibility of conflict,'" *id.* at 169; *accord United States v. Reichberg*, 5 F.4th 233, 246 (2d Cir. 2001) (finding no "duty to inquiry whenever, as a result of creative speculation, once could imagine a situation in which a conflict may have arisen").

## DISCUSSION

The court must determine whether there is a sufficient basis to warrant further examination into potential conflicts of interest. As noted above, the only "worrisome facts" that the Government identifies is that defense counsel invoked Rule 1.6 in refusing to answer the Government's request for defense counsel to voluntarily disclose fee-arrangement information. (Doc. 279, p. 4.)

It first should be emphasized that the Government makes no argument that Defendants were legally obligated to provide the Government the information it wanted.[5] The court will not automatically infer that impropriety is afoot merely

[5] The Government wrote in its reply brief that it would "gladly comply" with an order that states its request should be made "by way of subpoena." (Doc. 279, p. 7.) This order does not conclude, one way or the other, whether the Government should or should not seek fee-sharing

because the Government does not receive information that it is not entitled to in the first place.

Nevertheless, Defendants responded to the Government's request and offered an explanation for the refusal to provide the requested information. (Doc. 264, p. 4; *see* Doc. 271, pp. 10–11.) Any inference that may be drawn from Defendants' refusal depends on the reasonableness of the refusal, which is ultimately a function of the sensitivity of the subject matter at issue and the reason stated for the refusal. For example, a party refusing to provide information on a seemingly innocuous matter for a specious reason may justify the inference that such party is hiding something. Conversely, that inference will be harder to draw if a party refuses to provide information on a sensitive topic for a sensible reason.

Topics concerning the representation of a client are inherently sensitive. *See Billy v. Peiper*, No. 11-cv-1577, 2013 WL 4083657, at *6 (M.D. Pa. Aug. 13, 2013) ("[O]ne of the highest duties of an attorney is to maintain a client's confidences that are disclosed in the context of the attorney-client relationship."). The Government maintains that the fee arrangement between a client and attorney is not privileged. (Doc. 264, pp. 9–10.) Maybe so.[6] But, Rule 1.6 suggests that a

---

information via subpoena. Nor does the court pass any judgment on whether such a subpoena would be proper or improper under Federal Rule of Criminal Procedure 17.

[6] To be clear, the court takes no position on whether fee-arrangement information in this case is privileged or not.

lawyer's duty of confidentiality is not limited to privileged information. Under that rule, "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent." Pa. R. Prof'l Conduct 1.6. Comment three to Rule 1.6, clarifies that:

> The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.

*Id.* cmt. 3. Based on this language, Defendants' invocation of Rule 1.6 was, at the very least, facially reasonable and not specious.[7] The court, for this reason, will not draw any negative inferences from Defendants' refusal to provide a voluntary response to the Government's inquiry. Therefore, there are no facts that put the court on notice of an actual or potential conflict such that would trigger its duty to investigate a potential conflict of interest.

[7] The court need not and does not make any conclusions about the proper scope of Rule 1.6. A finding that Rule 1.6 plausibly applies here is sufficient to resolve the Government's motion.

## CONCLUSION

For the reasons set forth herein, the Government's motion to conduct a conflict-of-interest inquiry, Doc. 263, is **DENIED**.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: August 17, 2026