**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Docket No. 1:22-cr-00426 |
| | : | |
| SCOTT E. BOONE, | : | |
| DANIEL E. McGUIRE, | : | |
| THOMAS E. LAUER, | : | (Judge Wilson) |
| | : | |
| Defendants. | : | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION**
**TO PRECLUDE OR SUBSTANTIALLY LIMIT THE**
**TESTIMONY OF GOVERNMENT EXPERT JOHN W. KLEIN**

Mark E. Cedrone, Esquire
PA I.D. No. 45549
SAXTON & STUMP
123 S. Broad Street, Suite 2800
Philadelphia, PA 19109
(267) 665-2080
mec@saxtonstump.com

Lisa A. Mathewson, Esquire
PA I.D. No. 77137
MATHEWSON LAW LLC
1617 JFK Boulevard, Suite 2027
Philadelphia, PA 19103
(215) 339-9592
lam@mathewson-law.com

*Attorneys for Defendant*
*Scott E. Boone*

Efrem M. Grail, Esquire
PA I.D. No. 81570
Julia M. Gitelman, Esquire
THE GRAIL LAW FIRM
429 Boulevard of the Allies
Suite 500
Pittsburgh, PA 15219
(412) 332-9101
egrail@graillaw.com
jgitelman@graillaw.com

*Attorneys for Defendant*
*Daniel E. McGuire*

Juliana Tindall, Esq.
P.A. I.D. No. 332881
COMBER MILLER, LLC
436 Seventh Avenue
Suite 300 Koppers Building
Pittsburgh, PA 15219
(412) 894-1380
jtindall@combermiller.com

*Attorney for Defendant*
*Thomas E. Laurer*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. PERTINENT PROCEDURAL HISTORY ........ 1

III. STATEMENT OF FACTS ........ 2

IV. ARGUMENT ........ 3

A. The Court Should Preclude Mr. Klein's Testimony in its Entirety ........ 3

1. Mr. Klein participated in debarment proceedings concerning ECC's ineligibility for the program. ........ 3

2. A significant portion of Mr. Klein's testimony improperly relies on the factual basis supporting Rebecca Davis's guilty plea ........ 6

(a) Mr. Klein's reliance on the Statement of Facts violates the Confrontation Clause. ........ 8

(b) Mr. Klein's testimony in reliance on the Statement of Facts is not permissible under Rules 702 or 703. ........ 11

(1) Mr. Klein's anticipated testimony is impermissible under Rule 703. ........ 12

(2) Mr. Klein's anticipated testimony is inadmissible under Rule 702. ........ 15

B. In the Alternative, the Court Should Limit Mr. Klein's Testimony. ........ 16

1. The Court should limit Mr. Klein from discussing ECC's debarment and Ms. Davis's guilty plea ........ 16

2. The Court should limit Mr. Klein from opining on the meaning, purpose, and his interpretation of the SBA rules and regulations. ... 17

V. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Cases** **Page**

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006)............17, 18, 23

*Bruton v. United States*, 391 U.S. 123 (1968)............9, 10

*Crawford v. Washington*, 541 U.S. 36 (2004)............8, 9, 10

*FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.*, 695 F. Supp.2d 216 (W.D. Pa. 2010)............18

*Halcomb v. Washington Metropolitan Area Transit Authority*, 526 F. Supp.2d 24 (D.D.C. 2007)............18

*Hemphill v. New York*, 595 U.S. 140 (2022)............9

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009)............8, 9

*Taylor v. Southeastern Pennsylvania Transportation Authority*, No. 23-2140-KSM, 2024 WL 3205209 (E.D. Pa. Jun. 27, 2024)............23

*United States v. Harmon*, No. 18-2683, 2022 WL 17369594 (3d Cir. Dec. 2, 2022)............4

*United States v. Hinton*, 423 F.3d 355 (3d Cir. 2005)............8

*United States v. Leo*, 941 F.2d 181 (3d Cir. 1991)............18

*United States v. Tucker*, 714 F.3d 1006 (7th Cir. 2013)............4

*Williams v. Superintendent Greene SCI*, 112 F.4th 155 (3d Cir. 2024)............8, 9, 10

**Rules**

Federal Rule of Evidence 702............11, 17

Federal Rule of Evidence 703............12, 13, 14

Federal Rule of Evidence 801(c)............12

**Constitutional Provisions**

U.S. Const. amend. VI............8

## I. INTRODUCTION

Defendants Scott E. Boone, Daniel E. McGuire, and Thomas E. Laurer (collectively "Movants") submit this brief in support of their Motion to Preclude or Substantially Limit the Testimony of Government Expert John W. Klein. As described below, Mr. Klein's Rule 16(a)(1)(G) Disclosure reflects he intends, impermissibly, to base his testimony on and make reference to: 1) information premised on his personal knowledge gained during debarment proceedings involving Elstner Construction Company; and 2) the facts of and factual basis supporting Rebecca J. Davis's guilty plea. Additionally, but no less problematic, Mr. Klein appears poised to testify concerning matters beyond what the Federal Rules of Evidence permit and/or which invade the province of the Court, including but not limited to the purpose of certain regulations at issue in the case and the interpretation and meaning of such regulations.

## II. PERTINENT PROCEDURAL HISTORY

On or about July 10, 2026, the government served a Rule 16(a)(1)(G) Expert Disclosure for John W. Klein ("Expert Disclosure"), who has worked as counsel for the United States Small Business Administration ("SBA") since 1983. Through that Disclosure, a copy of which is attached to the Motion as **Exhibit A**, Mr. Klein, over 32 pages, outlines his anticipated testimony. Movants now seek to preclude or substantially limit Mr. Klein's testimony.

## III. STATEMENT OF FACTS

The government proposes to introduce expert testimony through long-time SBA attorney Mr. Klein. Based on his experience and knowledge, Mr. Klein is certainly well acquainted with some of the SBA regulations at issue in this case.

During his tenure at the SBA, Mr. Klein also served as its Debarment Official. In that capacity, he was involved in and obtained knowledge about the debarment of Elstner Construction Company ("ECC"), the company owned and controlled by Rebecca J. Davis, who has since pled guilty. The debarment proceeding in which Mr. Klein was involved occurred after Movants' involvement with Ms. Davis ended and concerned her blatant violation of the SBA's one-time eligibility rule. Unbeknownst to Movants, Ms. Davis had previously participated in the SBA 8(a) Program, which disqualified her from participation through ECC.

On June 23, 2026, Ms. Davis pled guilty pursuant to a plea agreement. That process included the presentment of a "Statement of Facts" to the Court. As reflected in his Disclosure, Mr. Klein has reviewed the Statement of Facts and, in large part, has based his testimony on it. The Expert Disclosure and its deficiencies are the subject of Movants' motion to preclude and/or substantially limit Mr. Klein's testimony.

## IV. ARGUMENT

### A. The Court Should Preclude Mr. Klein's Testimony in its Entirety.

The Court should preclude Mr. Klein's testimony for two separate but overlapping reasons. First, as SBA's Debarment Official, Mr. Klein participated in/presided over ECC's debarment, which was based on Ms. Davis's violation of the SBA's "one-time eligibility" requirement. Second, Mr. Klein's testimony is substantially and impermissibly premised on the factual basis supporting Ms. Davis's guilty plea.

#### 1. Mr. Klein participated in debarment proceedings concerning ECC's ineligibility for the program.

Mr. Klein has worked as SBA counsel for over forty years, and, during that time, he served as SBA Supervisor and Debarment Official. In his capacity as the SBA's Debarment Official, Mr. Klein participated in debarment proceedings involving ECC and Ms. Davis. **Exhibit A**, ¶ 5. These debarment proceedings related to Ms. Davis's violation of the SBA's "one-time eligibility" rule.[1]

Ms. Davis's violation of the SBA's one-time eligibility rule and the underlying facts are not relevant to this case, and certainly not admissible

[1] Years before becoming acquainted with Movants, Ms. Davis, through another company, participated in the SBA's 8(a) Business Development Program, which precluded any future participation.

against Movants, who were unaware of Ms. Davis's history with the SBA. Mr. Klein's participation in the ECC debarment proceedings impacts his status as an expert witness and impermissibly provides him with first-hand knowledge of facts not relevant to these proceedings, and certainly infects the bases for his opinions.

To the extent Mr. Klein anticipates testifying about the ECC debarment proceedings, he is effectively testifying as a fact witness. Although there exists no categorical bar to a witness serving a dual role (fact and expert), *see, e.g., United States v. Tucker*, 714 F.3d 1006, 1016 (7th Cir. 2013), *see also United States v. Harmon*, No. 18-2683, 2022 WL 17369594 *3 (3d Cir. Dec. 2, 2022), here, the dual-role concern is quite exacerbated. *Tucker* and similar cases have allowed case agents who are experienced law enforcement officers to serve as both fact and expert witnesses. In those cases, the subject matter of the expert testimony generally overlapped with the fact testimony. In other words, fact evidence was admissible and the expert testimony related directly to it.[2] That is not the case here, where Klein's non-expert testimony concerns events unrelated to Movants.

[2] For example, *Tucker* involved testimony from a case agent who provided lay fact evidence, but also expert evidence concerning the "roles of controlled buys and stash houses in drug investigations." *See Tucker*, *id.* at 1016.

The debarment proceedings in which Mr. Klein was involved and/or about which he has firsthand knowledge are not relevant to this case since Ms. Davis has now pled guilty. Specifically, the subject debarment concerned Ms. Davis's violation of the SBA's one-time eligibility rule, a fact of which no Movant was aware. The conduct underlying the debarment long predates the charges at issue in this case and bears no relationship to the regulatory issues of concern or subcontracting limitations at issue in this case, and is clearly inadmissible here.[3]

Given Mr. Klein's personal knowledge of and reliance upon facts inadmissible here, it will be impossible for Mr. Klein to render opinions and/or for Movants to cross-examine him about those opinions without interjecting or latently relying on the inadmissible facts. For this reason, his testimony should be precluded.

[3] Had Ms. Davis not pled guilty, Movants may have sought severance under Fed. R. Crim. P. 14 and certainly would have requested the Court to instruct the jury that any evidence concerning her violation of the one-time eligibility rule, if admitted at all, was admissible against her only.

### 2. A significant portion of Mr. Klein's testimony improperly relies on the factual basis supporting Rebecca Davis's guilty plea.

Mr. Klein acknowledges that his anticipated testimony is based, at least in part, on "the statement of facts that was read at [Ms. Davis's] guilty plea on June 23, 2026." **Exhibit A**, ¶ 35[sic](ix).[4]

Further review of the Expert Disclosure reveals Mr. Klein's significant reliance upon the factual basis supporting Ms. Davis's plea to reach various conclusions concerning adherence to SBA regulations, which adherence (or lack thereof) is arguably relevant to these proceedings. For example, Mr. Klein states:

> If the statement of facts provided in support of Davis's guilty plea on June 23, 2026 were true, Elstner Construction Company would have been ineligible to participate in the 8(a) Program due to a violation of multiple 8(a) Program rules, including rules relating to "control" and "self-performance."

**Exhibit A**, ¶ 47. *See also* **Exhibit A**, ¶¶ 52, 64, 66, 71, and 79.

In addition to making specific reference to the factual basis supporting Ms. Davis's guilty plea, careful review of the Expert Disclosure reveals that his reliance on the plea invades other portions of his testimony. For example,

---

[4] The relevant paragraph appears to be mislabeled as ¶ 35. This information is contained in the first paragraph under the section, "Basis of Testimony," which follows ¶ 41 on page 11 of **Exhibit A**.

throughout the Disclosure, Mr. Klein references and assumes facts alleged in the indictment. Many of those facts are also referenced in the Statement of Facts supporting Ms. Davis's guilty plea. *See*, *e.g.*, **Exhibit A**, ¶¶ 80, 82.

Testimony about or in any way based upon the Statement of Facts underlying Ms. Davis's guilty plea cannot be permitted for several reasons.

First, Mr. Klein's intended use of Ms. Davis's plea allocution plainly violates the Confrontation Clause. Second, the Statement of Facts, as Mr. Klein intends to use it, constitutes hearsay to which no exception applies. As such, the assertions are inadmissible. The Court should not permit Mr. Klein to rely on the Statement of Facts in rendering his opinion or otherwise testifying because they are not the type of facts on which testifying experts in Mr. Klein's field typically rely and the prejudicial impact of the "facts" greatly outweighs any conceivable probative value. Finally, Mr. Klein's anticipated testimony regarding Ms. Davis's guilty plea and associated plea agreement does not qualify as expert testimony. To the extent any part of Ms. Davis's plea agreement is admissible, Mr. Klein, as an expert in SBA regulations, is not the person through which to admit it.[5]

[5] Movants have simultaneously moved to globally exclude any evidence concerning Ms. Davis's guilty plea.

**(a) Mr. Klein's reliance on the Statement of Facts violates the Confrontation Clause.**

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. As a result, the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). "Testimony" is typically a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (citation omitted). "[S]tatements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial are [also] testimonial." *Williams v. Superintendent Greene SCI*, 112 F.4th 155, 164-65 (3d Cir. 2024) (quoting *United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005)). Such statements include "material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." *Id.* (quoting *Melendez-Diaz v.*

*Massachusetts*, 557 U.S. 305, 310 (2009)). "Accomplice confessions to the authorities and plea allocutions are among the statements the Supreme Court has enumerated as 'plainly testimonial.'" *Id.* at 165 (quoting *Crawford*, 541 U.S. at 63-64). *Accord Hemphill v. New York*, 595 U.S. 140, 150-51 (2022).

The Statement of Facts is part of Ms. Davis's plea allocution. Davis's admission of guilt to the charge, together with the description of the charge, as recited to the Court, is testimonial. There was, and will be, no opportunity for Movants to cross-examine Ms. Davis. Yet, in relying on the Statement of Facts to render his expert opinion, Mr. Klein would effectively present to the jury the fact that Ms. Davis pled guilty and the facts to which she pled. This violates Movants' constitutional right to confront a witness. *See Williams*, 112 F. 4th at 165 (holding that trial court's reading to jury of nontestifying codefendant's criminal information coupled with trial court's statement that codefendant pleaded guilty to charges constituted violation of Confrontation Clause). *See also Bruton v. United States*, 391 U.S. 123, 131 (1968) ("[a] jury cannot segregate evidence into separate intellectual boxes. It cannot determine that a confession is true insofar as it admits that A has committed criminal acts with B and at the same time effectively ignore the inevitable conclusion that B has committed those same criminal acts with A"). Furthermore, Mr. Klein's reliance on the Statement of Facts creates an inescapable Catch-22 predicament for Movants.

Movants cannot cross-examine Mr. Klein on the bases for his opinion, which right the Confrontation Clause guarantees to Movants, without revealing the existence and circumstances of Ms. Davis's guilty plea, the fact of which, under the same Confrontation Clause, Movants are entitled to keep out of evidence.

Additionally, as in *Bruton*, Mr. Klein's reference to Ms. Davis's plea of guilty presents the "inevitable conclusion" that Movants committed the same or related criminal acts, especially considering Mr. Klein's anticipated testimony in which he intends to draw those or very similar conclusions. A prime example of this is found at ¶ 79 of the Expert Disclosure, where he references and assumes as true the "facts recited at the time of Davis's guilty plea" and proceeds to opine that ECC violated "the 'control' requirements" and the "one-time eligibility rule" during "Davis's arrangement with [Movants]." **Exhibit A**, ¶ 79. *See also*, **Exhibit A**, ¶¶ 48, 49.

For these reasons, Mr. Klein's reference to and reliance upon the Statement of Facts violates Movants' right to confront the witness. This would run afoul of Supreme Court and Third Circuit precedent. *Williams*, 112 F.4th at 166; *Crawford*, 541 U.S. at 63-64. For this reason alone, the Court must preclude Mr. Klein from testifying, and certainly from referring to or relying upon Ms. Davis's guilty plea, the associated plea agreement, and the Statement of Facts.

**(b) Mr. Klein's testimony in reliance on the Statement of Facts is not permissible under Rules 702 or 703.**

Additionally, the Statement of Facts constitutes inadmissible hearsay on which Mr. Klein cannot properly rely under Rule 703 to render his expert opinion. And, to the extent Mr. Klein's reference to the Statement of Facts is somehow permissible, testimony from an SBA expert on the topic of Ms. Davis's guilty plea serves no useful purpose to the factfinder and therefore fails the Rule 702(a) test.

Under Federal Rule of Evidence 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 703 permits an expert witness "to base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. The facts relied upon need not be admissible *if* "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Id.* If the facts are otherwise inadmissible, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.* Here, the government has not made, nor can it make, such a showing.

**(1) Mr. Klein's anticipated testimony is impermissible under Rule 703.**

The Statement of Facts is inadmissible here and its prejudicial impact far outweighs any possibly probative value.

The Federal Rules of Evidence define hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing," that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The Statement of Facts was offered during Ms. Davis's plea hearing in <u>the government's prosecution of her</u>. The Statement of Facts thus contains statements made outside of the current proceeding. Mr.

Klein anticipates relying on the Statement of Facts to testify, among other problematic opinions, that:

> Davis's certification was false and a violation of the "onetime eligibility" rule that should have rendered Elstner Construction Company ineligible to participate in the 8(a) Program. Had SBA known of Davis's previous involvement in the 8(a) Program with Yeso, SBA would not have permitted Elstner Construction Company to participate in the 8(a) Program.
>
> If the statement of facts provided in support of Davis's guilty plea on June 23, 2026 were true, Elstner Construction Company would have been ineligible to participate in the 8(a) Program due to the violation of multiple 8(a) Program rules, including the rules relating to "control" and "self-performance."

**Exhibit A**, ¶¶ 45, 47. *See also id.* at ¶ 48. As such, the government, through Mr. Klein, offers the Statement of Facts for the truth of the matters asserted therein. The Statement of Facts thus constitutes inadmissible hearsay for the purpose Mr. Klein intends.

Under Rule 703, expert testimony premised on inadmissible evidence is permissible *only if* "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. Mr. Klein purports to be an expert concerning SBA and the Section 8(a) Program and Service Disabled Veteran Owned Small Business Program ("SDVOSB Program") regulations, and he anticipates testifying about those

programs and the governing rules during the applicable time period. **Exhibit A**, ¶ 7. There is no suggestion in the Expert Disclosure that experts in Mr. Klein's field typically rely on plea agreements, or related statements of fact, to formulate expert opinions or testimony; nor could he support such an assertion. Regulatory experts on SBA programs presumably rely on professional experience, specialized training or education, administrative materials, and/or historical data. The Statement of Facts is a compilation of statements unique to Ms. Davis and the role she played in the charged conduct. Plainly, the circumstances surrounding Ms. Davis's participation in the alleged offense do not comprise the kind of "facts" or "data" upon which a purported regulatory expert like Mr. Klein would reasonably rely. Accordingly, to the extent Mr. Klein relies upon the Statement of Facts to form his opinion, he relies on facts that are "otherwise [] inadmissible."

Where an expert seeks to rely on facts that are otherwise inadmissible, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Here, given the Confrontation Clause issues, combined with the prohibition against introduction of noncooperating codefendant guilty pleas, introduction of this evidence is highly prejudicial, and cannot be permitted.

**(2) Mr. Klein's anticipated testimony is inadmissible under Rule 702.**

Finally, a witness qualified as an expert may testify in the form of an opinion only if the proponent demonstrates to the Court that it is *more likely than not* that the expert's specialized knowledge will help the jury understand the evidence or determine a fact in issue. The government offers Mr. Klein as an expert on the Section 8(a) Program and its rules and the SDVOSB Program during the relevant time periods. Just as an expert on this subject matter would not typically rely on a guilty plea or the contents thereof to render an expert opinion, an expert on the Section 8(a) Program and SDVOSB Programs possesses no specialized knowledge or expertise on guilty pleas (or on the individual who entered the plea) and therefore can provide no meaningful assistance to a factfinder on the topic. To the extent any aspect of Ms. Davis's guilty plea is admissible, Mr. Klein and the government cannot show that Klein's SBA expertise is at all relevant to the guilty plea such that he could permissibly assist the trier of fact by testifying about it. As addressed below, Mr. Klein's proposed testimony in which he applies the facts of Ms. Davis's guilty plea to SBA rules and regulations and draws legal conclusions therefrom is indisputably improper under the law of this (and every other) Circuit. While Mr. Klein likely can permissibly testify to the general background of relevant

SBA regulations and associated cultures and practices, such testimony serves for the jury no purpose with respect to Ms. Davis's guilty plea.

As addressed above, Mr. Klein should not be permitted to testify at all or reference or rely upon Ms. Davis's guilty plea, the plea agreement, or the Statement of Facts. The Confrontation Clause and associated controlling precedent require nothing less. Moreover, the Statement of Facts constitutes inadmissible hearsay, is far more prejudicial than probative, and is not the proper subject of expert testimony of a purported SBA expert. For any or all of these reasons, the Court must preclude Mr. Klein's testimony.

### B. In the Alternative, the Court Should Limit Mr. Klein's Testimony.

#### 1. The Court should limit Mr. Klein from discussing ECC's debarment and Ms. Davis's guilty plea.[6]

As argued above, the Court should preclude Mr. Klein's testimony, in its entirety, for a multitude of reasons. However, to the extent the Court determines that the Expert Disclosure reflects topics on which Mr. Klein may

---

[6] To be clear, Movants do not seek limitation of Mr. Klein's testimony as a proper cure to the influence over his opinions following his reliance on information gleaned from the ECC debarment proceedings and facts from Ms. Davis's guilty plea. Even with proper limitations, it is impossible for Mr. Klein to offer opinions without regard to improper considerations. It will be impossible for him, as it would be for anyone, to compartmentalize proper considerations and the pervasive improper ones.

permissibly testify, the Court should limit his testimony so as to preclude any discussion of the subject matters identified above: ECC's debarment, which was based on Ms. Davis's violation of the SBA's "one-time eligibility" requirement; and Ms. Davis's guilty plea, the plea agreement, and the associated Statement of Facts.

**2. The Court should limit Mr. Klein from opining on the meaning, purpose, and his interpretation of the SBA rules and regulations.**

The Court must also limit Mr. Klein's testimony to the extent he seeks to testify as to the purpose, meaning, and his interpretation of SBA rules and regulations. The Expert Disclosure plainly shows that Mr. Klein seeks to interpret the subject rules and regulations for the jury and, in doing so, opine on the purpose and intent of those regulations and apply the facts of this case to those authorities. Testimony of this nature amounts to the proffer of a legal opinion and is impermissible as such. It is for the Court to instruct the jury on the law, including the meaning and purpose of the SBA regulations and how the factfinders should apply that law to the facts of this case.

Rule 702 of the Federal Rules of Evidence permits expert testimony that will help the trier of fact "to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. The Court "has discretion to determine whether expert testimony will help the trier of fact." *Berckeley Inv. Group, Ltd. v. Colkitt*,

455 F.3d 195, 217 (3d Cir. 2006). In exercising that discretion, however, the Court "must ensure that an expert does not testify as to the governing law of the case." *Id.* "Expert testimony consisting of legal conclusions is impermissible because such testimony merely states what result should be reached, thereby improperly influencing the decisions of the trier of fact and impinging upon the responsibilities of the court." *Halcomb v. Washington Metropolitan Area Transit Authority*, 526 F. Supp.2d 24, 27 (D.D.C. 2007). An expert opinion that merely tells the jury what result to reach is prohibited "because it would usurp the District Court's pivotal role in explaining the law to the jury." *Berckeley Inv. Group*, 455 F.3d at 217. *See FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.*, 695 F. Supp.2d 216, 221 (W.D. Pa. 2010) ("It is the duty of the court, not of any witness, to explain the law to the jury"). An expert can testify as to the customs and practices of his industry, but he cannot give his opinion as to what is required under the law or whether the defendant complied with the law. *Berckeley Inv. Group*, 455 F.3d at 218 (citing *U.S. v. Leo*, 941 F.2d 181, 197 (3d Cir. 1991) (holding testimony permissible because "the expert did not give his opinion as to what was required under the law, or whether the defendant complied with the Act," but, rather, "testified, based upon his experience in the defense industry, as to how firms such as [the defendant's] operated when performing contracts governed by the Act")).

Mr. Klein anticipates interpreting the governing rules and regulations, and otherwise rendering legal conclusions, as follows:

> In addition to federal contracting opportunities, the 8(a) Program provides participants with business development support, including mentorship, training, and counseling. These services are intended to enhance participants' competitiveness and their long-term viability as businesses.

**Exhibit A**, ¶ 17.

> The purpose of both Programs is undermined when qualifying individuals do not unconditionally own and control a participating business. Indeed, the purpose of these Programs is to give those qualifying individuals actual experience and management opportunities so that the participating businesses are better able to compete in the marketplace for federal government contracts.

*Id.* at ¶ 5.

> Following award of a contract, participating concerns must also, in fact, perform a certain percentage of the work with their own employees. Again, depending on the type of contract involved, the percentage may vary from 15% to 50%. For example, with a general construction contract, a concern must perform at least 15% of the cost of a contract with its own employees, not including the cost of materials. This "self-performance" requirement is likewise intended to help small businesses develop in order for them to become more viable to compete on their own.

*Id.* at ¶ 35.

> Davis's certification was false and a violation of the "onetime eligibility" rule that should have rendered Elstner Construction Company ineligible to participate in the 8(a) Program. Had SBA known of Davis's previous involvement in the 8(a) Program with Yeso, SBA would not have permitted Elstner Construction Company to participate in the 8(a) Program.

*Id.* at ¶ 45.

> Relatedly, required annual certification forms for 8(a) Program participants also pose questions about whether the relevant disadvantaged individuals have previously applied for or participated in the 8(a) Program, even if that participation occurred through a different company (e.g., "Has the firm or any principal previously applied for 8(a) or SDB certification? . . . Has any individual previously used his/her eligibility to qualify a firm for 8(a) BD Program participation?"). If Davis answered these questions falsely, that would have also constituted grounds for termination from the 8(a) Program, for the reasons explained below. Having reviewed several of the company's annual updates, it appears that these questions were answered falsely.

*Id. at* ¶ 46.

> If the statement of facts provided in support of Davis's guilty plea on June 23, 2026 were true, Elstner Construction Company would have been ineligible to participate in the 8(a) Program due to the violation of multiple 8(a) Program rules, including the rules relating to "control" and "self-performance."

*Id.* at ¶ 47.

> Above, I identified various factors that SBA considers in determining whether disadvantaged individuals maintain "control" over 8(a) participant concerns.

Based on a consideration of these factors, SBA would have concluded that Elstner Construction Company was ineligible to participate in the 8(a) Program due to a lack of "control" based on certain key facts from that statement, taken together:

Davis's agreement that Defendants Boone, McGuire and Lauer would have sole management authority over all jobs awarded to Elstner Construction Company at Letterkenny Army Depot; Davis's agreement that Elstner Construction Company was required to use certain subcontractors to perform all construction work at Letterkenny Army Depot, under the direction of Boone, McGuire, and Lauer;

Davis's agreement that Elstner Construction Company was not able to perform contract work itself or use subcontractors of Davis's own choosing; instead, subcontractors were chosen for her, without Elstner Construction Company's input. Relatedly, Davis was explicitly discouraged on multiple occasions from traveling to Letterkenny Army Depot to perform work or monitor the progress of work and was told that Elstner Construction Company would not get any more delivery orders if she did that;

Davis did not negotiate with Boone, McGuire, and Lauer how much Elstner Construction Company would pay a subcontracting company associated with Boone, McGuire, and Lauer for its services prior to a job. Instead, Elstner Construction Company was sent a bill and a completed check for Davis to sign after a job was done;

Davis had no input into which individuals from subcontracting companies were placed on her company's payroll or how much they were paid. Davis and Elstner Construction Company did not have the

> right to direct and control these workers and did not direct or control these workers;
>
> These individuals from subcontracting companies were moved onto the Elstner Construction Company payroll to make it appear that Elstner was satisfying the "self-performance" requirements identified above. Despite the fact that such individuals were paid directly by Elstner Construction Company as W-2 employees, in some cases, subcontracting companies from which these individuals came then subtracted the "wages" that Elstner paid to these individuals from the invoices that the subcontracting companies submitted to Elstner. As a result, the total payment from Elstner was no different than if the companies were working for Elstner solely as third-party subcontractors and Elstner was not paying the wages of their personnel.

*Id.* at ¶¶ 48(a)-(f).

> If the arrangements described in the 2007 "assignment-of-authority" letters were accurate, SBA would have concluded that both Elstner Construction Company and Alan Smallwood Excavating were ineligible to participate in the 8(a) Program due to a lack of "control" based on certain key facts, taken together:
>
> Both Elstner and Smallwood appear to have given control over all aspects of contract performance to Boone, McGuire, and Lauer and pledged "not [to] interfere" (in one case, "with any facet of their operations," and in the other, "with the day-to-day operations")[;]
>
> Both letters state that "Delivery Orders would only be written against the IDIQ Contract if Messrs. Boone, McGuire, and Lauer managed the projects"[;]

> Both letters describe assigning authority over construction projects in exchange for bonding assistance from Boone, McGuire, and Lauer[;]
>
> Both letters describe the creation of dual-signature bank accounts that prevented financial disbursements by the disadvantaged individuals on whom 8(a) Program eligibility was based.

*Id.* at ¶¶ 49(a)-(d).

> In addition to this arrangement violating the 8(a) Program's "control" requirement, characterizing the involvement of an 8(a) Program prime contractor in the performance of a contract awarded to it as "interference" is at odds with the fundamental purpose of the 8(a) Business Development Program, as that purpose is stated in the Program rules.

*Id.* at ¶ 50. *See also id.* at ¶¶ 51, 52, 53, 55, 56, 58, 62, 64, 66-70, 72, 74-76, 79, 80, 82.

Mr. Klein's anticipated testimony, some of which is identified above, purports to interpret the SBA rules and regulations at issue in this case and otherwise offer legal meaning to those authorities. Mr. Klein also anticipates applying his interpretation of the rules and regulations to the facts of this case, opining that the SBA would have concluded and therefore acted a certain way. This proposed testimony is impermissible under governing case law. *Berckeley Inv. Group*, 455 F.3d at 217. *Cf. Taylor v. Southeastern Pennsylvania Transportation Authority*, No. 23-2140-KSM, 2024 WL 3205209, at *5-7 (E.D.

Pa. Jun. 27, 2024) (excluding expert opinions as impermissible legal conclusions because "[e]ach statement is [an] opinion about what was permitted under the regulations and whether SEPTA's conduct in [the] case complied with them," and collecting analogous cases).

## V. CONCLUSION

For all of the reasons set forth in the motion, as well as in this accompanying brief, this Court should preclude Mr. Klein from testifying and/or substantially limit his testimony.

Dated: September 4, 2026

Respectfully submitted:

*/s/ Mark. E. Cedrone*
Mark E. Cedrone, Esquire
PA I.D. No. 45549
SAXTON & STUMP
123 S. Broad Street, Suite 2800
Philadelphia, PA 19109
(267) 665-2080
mec@saxtonstump.com

*/s/ Lisa A. Mathewson*
Lisa A. Mathewson, Esquire
PA I.D. No. 77137
MATHEWSON LAW LLC
1617 JFK Boulevard, Suite 2027
Philadelphia, PA 19103
(215) 339-9592
lam@mathewson-law.com

*Attorneys for Defendant*
*Scott E. Boone*

*/s/ Efrem M. Grail*
Efrem M. Grail, Esquire
PA I.D. No. 81570
*/s/ Julia M. Gitelman*
Julia M. Gitelman, Esquire
THE GRAIL LAW FIRM
429 Boulevard of the Allies
Suite 500
Pittsburgh, PA 15219
(412) 332-9101
egrail@graillaw.com
jgitelman@graillaw.com

*Attorneys for Defendant*
*Daniel E. McGuire*

*/s/ Juliana Tindall*
Juliana Tindall, Esq.
COMBER MILLER, LLC
436 Seventh Avenue
Suite 300 Koppers Building
Pittsburgh, PA 15219
(412) 894-1380
jtindall@combermiller.com

*Attorney for Defendant*
*Thomas E. Laurer*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served, this 4th day of September, 2026, via the Court's Electronic Case Filing ("ECF") System, upon all counsel of record.

*/s/ Mark E. Cedrone*
MARK E. CEDRONE, ESQ.