UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 1:22-CR-00426 |
| | ) | |
| v. | ) | (Judge Wilson) |
| | ) | |
| SCOTT E. BOONE, *et al.*, | ) | |
| Defendants. | ) | (Electronically Filed) |

**BRIEF IN SUPPORT OF MOTION *IN LIMINE***

BRIAN D. MILLER
United States Attorney

/s/ K. Wesley Mishoe
K. Wesley Mishoe (PA 321983)
Assistant United States Attorney
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Tel: (717) 221-4482
kenneth.mishoe@usdoj.gov

# TABLE OF CONTENTS

Background ........................................................................................ 1

Argument ........................................................................................ 4

A. The Jordan Disclosure Did Not Conform to the Disclosure Obligations Under Federal Rule of Criminal Procedure 16 ... 4

1. The Jordan Disclosure Did Not Provide the United States with "All" Opinions that Defendants Might Elicit from Jordan ........................................................ 5

2. The Jordan Disclosure Did Not Include Bases and Reasons for All of Jordan's Opinions ........................... 11

B. Portions of Jordan's Purported Expert Testimony Are Facially Inadmissible ........................................................ 16

1. Jordan's Anticipated Expert Testimony Consists of Unreliable Opinions ................................................ 18

2. Jordan's Anticipated Expert Testimony Includes Information that Is Not a "Fit" With the Case ............ 22

Conclusion ........................................................................................ 30

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Broe v. Manns*,
No. 3:15CV985, 2016 WL 7048988 (M.D. Pa. Dec. 5, 2016) ................ 18

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ................................................ 17, 18, 22

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999) ................................................ 18

*Sardis v. Overhead Door Corp.*,
10 F.4th 268 (4th Cir. 2021) ................................................ 17

*Schneider ex rel. Estate of Schneider v. Fried*,
320 F.3d 396 (3d Cir. 2003) ................................................ 22

*State Farm Fire and Casualty Co. v. PPL Elec. Utils. Corp.*,
No. 1:23-CV-01661, 2026 WL 881187 (M.D. Pa. Mar. 31, 2026) ......... 22

*Suter v. Gen. Acc. Ins. Co. of Am.*,
424 F.Supp.2d 781 (D.N.J. 2006) ................................................ 19

*Trout v. Milton S. Hershey Med. Ctr.*,
576 F.Supp.2d 673 (M.D. Pa. 2008) ................................................ 18

*Tyger v. Precision Drilling Corp.*,
832 F. App'x 108 (3d Cir. 2020) ................................................ 17

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
949 F.3d 825 (3d Cir. 2020) ................................................ 18

*United States v. Anderson*,
171 F.4th 232 (3d Cir. 2026) ................................................ 18

*United States v. Barton*,
909 F.3d 1323 (11th Cir. 2018) .......... 17

*United States v. Bressi*,
No. 4:19-CR-207, 2024 WL 3296938 (M.D. Pa. July 3, 2024) .......... 12

*United States v. Ford*,
481 F.3d 215 (3d Cir. 2007) .......... 17

*United States v. Hertel & Brown Physical and Aquatic Therapy*,
No. 1:21-CR-39, 2025 WL 641233 (W.D. Pa. Feb. 27, 2025) .......... 7

*United States v. Ji*,
No. 18-CR-611, 2022 WL 3081868 (N.D. Ill. Aug. 3, 2022) .......... 29

*United States v. Kaufman*,
No. 19-CR-504, 2021 WL 4084523 (S.D.N.Y. Sept. 8, 2021) .......... 11

*United States v. Korbe*,
No. 2:09-CR-00005, 2010 WL 4639042 (W.D. Pa. Nov. 8, 2010) .......... 29

*United States v. Mrabet*,
703 F. Supp. 3d 442 (S.D.N.Y. 2023) .......... 12

*United States v. Rider*,
No. 4:20-CR-232, 2022 WL 2813719 (E.D. Tex. July 18, 2022) .......... 29

*United States v. Schiff*,
602 F.3d 152 (3d Cir. 2010) .......... 16, 17

*United States v. Valle*,
No. 12-CR-847, 2013 WL 440687 (S.D.N.Y. Feb. 2, 2013) .......... 11

*United States v. Velasquez*,
64 F.3d 844 (3d Cir. 1995) .......... 17

*United States v. Williams*,
974 F.3d 320 (3d Cir. 2020) .......... 17

*VanDine v. Summit Treestands, LLC*,
738 F. Supp. 3d 599 (E.D. Pa. 2024) .................................................. 17

**Rules**

FED. R. CRIM. P. 16 ........................................................................ 4, 5
FED. R. EVID. 401 ............................................................................ 22
FED. R. EVID. 401 ............................................................................ 22
FED. R. EVID. 702 ............................................................................ 16

**Regulations**

13 C.F.R. § 121.106 ......................................................................... 24
13 C.F.R. § 124.106 ........................................................................... 9

In advance of trial, Defendants served the United States with an expert-witness disclosure for Joseph Jordan (the "Jordan Disclosure"). The Jordan Disclosure, however, fails to conform to the clear disclosure obligations under Federal Rule of Criminal Procedure 16. Accordingly, it remains largely unclear what opinions Jordan will give at trial and why those opinions should be accepted as reliable. Moreover, portions of Jordan's proposed expert testimony are clearly unreliable and will not be helpful for the jury. Therefore, as discussed in more detail below, the Court should grant the United States' motion *in limine* to exclude Jordan from testifying as an expert. At minimum, the Court should order Defendants to promptly serve the United States with a disclosure for Jordan that complies with Rule 16.

## BACKGROUND

On December 15, 2022, a federal grand jury returned an indictment against Defendants and Rebecca J. Davis for Count 1 – conspiracy to commit major fraud against the United States and Counts 2 through 6 – major fraud against the United States. (Doc. 1.) At Counts 7 and 8, the Indictment included additional charges against Defendants for conspiracy to commit major fraud against the United States and major

fraud against the United States, respectively. (*Id.*) Since then, Davis pleaded guilty to Count 1 of the Indictment. (Doc. 316.)

A federal grand jury has also since returned a superseding indictment. (Doc. 340.) The Superseding Indictment included the same charges against Defendants but added factual detail consistent with the contents of the United States' amended bill of particulars. (*See* Doc. 343 (***Notice***.))

With respect to Counts 1–6, Defendants are accused of conspiring to participate, and participating, in a fraud scheme to obtain millions of dollars' worth of construction contracts at Letterkenny Army Depot ("Letterkenny") that were set aside for eligible small businesses participating in the Small Business Administration's 8(a) Program. Similarly, under Counts 7–8, Defendants are accused of conspiring to participate, and participating, in a fraud scheme to obtain a contract from the Salem Veteran's Affairs Medical Center (the "Salem VA") that was set aside under the SBA's Service-Disabled Veteran Owned Small Business ("SDVOSB") Program.

A jury trial is scheduled to begin on October 13, 2026. (Doc. 207.) Ahead of trial, the United States timely served Defendants with Exhibit 1, an expert disclosure for John Klein, Associate General Counsel for Procurement Law and Deputy General Counsel of the SBA (the "Klein Disclosure"). Defendants provided the United States with the Jordan Disclosure, Exhibit 2, averring that they might offer Jordan as an expert at trial "in the [SBA]'s contracting preference Programs for [8(a) businesses] and other small businesses." (Ex. 2, p. 2.) Because the Jordan Disclosure did not comply with the bright-line requirements under Federal Rule of Criminal Procedure 16 and laid out inadmissible testimony, the United States has filed a motion *in limine* to exclude Jordan's testimony. This supporting brief follows.

## ARGUMENT

### A. The Jordan Disclosure Did Not Conform to the Disclosure Obligations Under Federal Rule of Criminal Procedure 16.

Federal Rule of Criminal Procedure 16 requires defendants to disclose, in writing: (i) "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief"; (ii) "the bases and reasons" for the opinions; (iii) the proposed "witness's qualifications, including a list of all publications authored in the previous 10 years"; and, (iv) "a list of all other cases in which during the previous [four] years, the witness . . . testified as an expert at trial or by deposition." FED. R. CRIM. P. 16(b)(1)(C)(i), (iii). These disclosure obligations were "intended to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." FED. R. CRIM. P. 16, advisory committee's note to 2022 amendment. They were also imposed via amendment in 2022 to address "shortcomings of the prior provisions on expert witness disclosure," including "the lack of adequate specificity regarding what information must be disclosed." *Id.*

When a defendant fails to adhere to the Rule 16 disclosure obligations, the Court should prohibit the defendant from introducing the proffered witness as an expert or otherwise exclude portions of the witness' proposed expert testimony. *See* FED. R. CRIM. P. 16(d)(2). Court intervention is needed to address deficiencies in the Jordan Disclosure.

**1. The Jordan Disclosure Did Not Provide the United States with "All" Opinions that Defendants Might Elicit from Jordan.**

First, in the Jordan Disclosure, Defendants appeared to indicate that they withheld Jordan's expert opinions responding to opinions in the Klein Disclosure. Specifically, despite otherwise identifying Jordan as a possible expert witness in their case-in-chief, Defendants wrote the following:

> Jordan may . . . testify in ***rebuttal*** to the opinions and testimony stated in the government's expert disclosure that are actually introduced at trial. These would not be opinions in the defense case-in-chief, because they depend on what evidence ends up actually being introduced (in terms of expert/summary testimony and exhibits), and so they are not all addressed in this Rule 16 disclosure. The defense reserves the right to present at trial such rebuttal testimony based on the government's presentation and other future developments.

(Ex. 2, pp. 1, 5 (emphasis added).) Defendants subsequently informed the United States that the "rebuttal" language was only meant to refer to Jordan potentially testifying beyond the four corners of the Jordan Disclosure only if that were warranted based on the actual elicited testimony from Klein. To avoid any misunderstanding, the United States asked Defendants to confirm that "the Jordan disclosure contains all opinions that Jordan may offer at trial, assuming that Klein testifies in a manner that is consistent with the government's expert disclosure from last month," and the United States offered an example of where it appeared opinions were still being withheld. In response, Defendants said simply that they "believe[d] the disclosure to be adequate." Notwithstanding that statement, it appears that Jordan, as described below, has already formed and will later offer additional opinions responsive to what Klein is expected to testify about, as described in the detailed Klein Disclosure. Rule 16 requires the disclosure of those opinions, and the bases and reasons for them, now.

As counsel for some of Defendants know from their involvement in the cited case that follows, "[p]resumably, if [Defendants] call[] [Jordan] as an expert witness, it will be during [their] case-in-chief, and [their] disclosure . . . acknowledges as much." *United States v. Hertel & Brown Physical and Aquatic Therapy*, No. 1:21-CR-39, 2025 WL 641233, *1 (W.D. Pa. Feb. 27, 2025). "Therefore, irrespective of how [Defendants] characterize [Jordan's] testimony, the disclosure requirements of Rule 16 would seem to apply." *Id.* Thus, Defendants cannot pocket Jordan's opinions that respond to Klein's opinions for use at trial by invoking the concept of "rebuttal."

There is no defense "rebuttal." The United States will present its case in chief, and defendants may then present their own case in chief, and the United States will then have the opportunity for rebuttal. This explains why Rule 16, which speaks in no uncertain terms, requires Defendants to provide the United States with a complete statement of "all" of Jordan's expert opinions, without reserving anything for so-called defense rebuttal.

What is more, Defendants have already been put on notice of "all" expert opinions that Klein will offer at trial, in the United States' case-in-chief. Accordingly, there is no reason why Defendants cannot identify in advance of trial "all [responsive] opinions" that Jordan might harbor. (*See also* Ex. 2, p. 5 (acknowledging that Jordan's testimony and opinions were based in part on "the Klein Report and documents referenced therein.")) Furthermore, without knowing what already formed opinions that Jordan might offer at trial in response to Klein's expert opinions, the United States cannot fully satisfy its own obligation to serve notice on Defendants about what Klein's testimony might be "to counter [Jordan's] testimony." *See* FED. R. CRIM. P. 16(a)(1)(G)(iii).

Second, the Jordan Disclosure consists of topic areas without identifying any expert opinion. For instance, the Jordan Disclosure provided that Jordan:

- "may explain [regulatory] variables [in the context of limitations on subcontracting] and how SBA evaluated them in certain hypothetical situations";[1]

- "may also discuss the annual reports at issue in this case and the information they included that may have provided indications of compliance and the extent to which historical data and information can be presently measured";

- "may explain th[e] [control] factors [under 13 C.F.R. § 124.106], and what they mean"; and,

[1] The Jordan Disclosure does not disclose what these hypothetical situations are or how any variables, which are not fully identified, apply to them. Compounding that inadequate statement is an even more confusing and unclear preamble:

> Generally speaking, these regulations establish guidelines for the percentage of work that a program participant would be expected to perform with its own employees, as well as guidelines for contracting officers to set those percentages and the circumstances they should consider. Each of these regulations used slightly different language, and each has changed over time, such that how the percentage would be set on any given contract, and how compliance would be evaluated during or after performance, would depend on many variables. For example, whether materials are included, how specialty trades or services would be counted, and the difference between labor and full contract costs, have not always been consistent across the regulations, contracts, or time.

(Ex. 2, p. 3) What does this mean, and what is Jordan going to say? The purpose of an expert disclosure is to answer such questions, not to engage in a mysterious form of issue spotting.

- "may analyze Annual Reviews that may be introduced into evidence and explain what the information within them would have meant to the SBA in terms of 'control.' Mr. Jordan may also speak to some of the circumstances alleged in this case, including hiring subcontractors or individuals directly to manage projects, sending a letter to a bonding company purportedly assigning authority over a single contract to another individual or business, having a dual signature bank account, and having an indemnification agreement for bonding. Although these considerations may be relevant, they are certainly not dispositive, factors in a "control" inquiry. In practice, these considerations would be balanced against all other circumstances, including whether the owner controlled other aspects of her business, why the circumstances existed, how long they existed, and whether other circumstances counterbalanced them."

(Ex. 2, pp. 3, 4, 5.) The plain purpose of the revised Rule 16 is to avoid amorphous statements like the foregoing, which obscure rather than clarify what Jordan will say at trial. For example, what information in the annual reviews—each of which is approximately 100 pages in length—is Jordan going to analyze, and what would "the information within them . . . have meant to the SBA in terms of 'control'"? Is Jordan going to provide a conclusion about the "'control' inquiry," and if so, what is it, and what "circumstances" are ultimately "dispositive" in this inquiry? If Jordan has an expert opinion or opinions to provide, he needs to say what they are now. Defendants may not hint or gesture at what relevant considerations may be and then reserve the option to give any

opinion of Jordan's choosing at trial. Without more, the foregoing statements are plainly insufficient to satisfy the "all" opinions disclosure obligation. *See United States v. Valle*, No. 12-CR-847, 2013 WL 440687, *5 (S.D.N.Y. Feb. 2, 2013) ("Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions"); *see also United States v. Kaufman*, No. 19-CR-504, 2021 WL 4084523, *19 (S.D.N.Y. Sept. 8, 2021) (finding disclosures insufficient where "it [wa]s unclear exactly what [the expert's] proposed opinions would have been"). Rule 16 demands that Defendants do more to ensure that the United States has the same fair opportunity to be prepared for trial and have the opportunity for effective cross-examination.

### 2. The Jordan Disclosure Did Not Include Bases and Reasons for All of Jordan's Opinions.

Defendants propose calling Jordan as an expert based on his "knowledge and experience, including his leadership and policy roles within the SBA and [the Federal Acquisition Regulatory] Council." (Ex. 2, p. 5.) But to satisfy Rule 16's disclosure obligations, Defendants "must explain how that [knowledge and] experience leads to . . . conclusions reached, why that [knowledge and] experience is a sufficient basis for

[an] opinion, and how that [knowledge and] experience is reliably applied to . . . facts." *United States v. Bressi*, No. 4:19-CR-207, 2024 WL 3296938, *11 (M.D. Pa. July 3, 2024) (citations omitted). It is not enough for Defendants to rely upon a boilerplate statement that expert testimony would be derived from a proposed witness' "knowledge and experience." *See United States v. Mrabet*, 703 F. Supp. 3d 442, 444 (S.D.N.Y. 2023) (finding that, absent elaboration, the representation that purported expert testimony would be "based on [the witness'] training, education, and experience, including his 37 years as a law enforcement officer primarily involved in investigating narcotics trafficking" was a "patent evasion" of Rule 16's requirement that the bases and reasons for expert opinion be provided).

In the Jordan Disclosure, Defendants made no attempt to tether Jordan's purported "knowledge and experience" to conclusions and opinions that Jordan has reached. That is especially so as it concerns his purported expert testimony that:

- The SBA "understood that program participants and their subcontractors and affiliates were not always in full compliance with every regulation . . . . [D]uring the relevant time, most owners, operators, and employees of SBA program participants and their subcontractors were either unaware of all . . . the specific requirements of the regulations . . . or were unaware of

how the SBA or a contracting agency might interpret and apply those regulations."

- The SBA "did not view, and to my knowledge never has viewed, all regulatory non-compliance as automatically requiring punishment, or debarment or other sanction. It was the SBA's custom and practice to provide opportunities for education and assistance when non-compliance was suspected or discovered, depending on the circumstances."

- "[I]ndustry custom and practice, including within the SBA, reflected that the measurement and specifics of compliance [with SBA contracts] differed by the type of contract and work being performed."

- "The SBA understood at the relevant time that it was necessary and common for program participants to hire individuals for specific contracts or tasks. SBA's view of the practice did not change if those individuals were hired from subcontractors that were already working at the contract location, a practice sometimes called 'rebadging.' Indeed, 'rebadging' was not only common, but often preferred, as it maintained continuity, quality, and performance expectations."

- "[I]t was and is extremely challenging for program participants – by definition small businesses – to secure bonding support for the sorts of contracts that help them develop and grow."

- "[N]ot every later circumstance that be inconsistent with a participant's compliance with the rules would be viewed as a false certification . . . . [M]ost owners, operators, and employees of participating concerns and subcontractors did not fully understand all of the specific requirements of the regulations, and the 'control' regulation has long been an area of particular difficulty for industry participants, especially during the relevant time."

(Ex. 2, pp. 2, 3–4, 5.)

It is not clear from the Jordan Disclosure precisely what substantive role Jordan played with the SBA beyond testifying before Congress. In that vein, the representations in Jordan's *curriculum vitae* ("CV") about what he did while working for the SBA could mean many things. (*See* Ex. 2, p. 7.) Also, the Court would likely not accept Jordan as a subject-matter expert over all issues relating to SBA's small business programs—from high-level policy down to the minutiae of individual programs—on the basis of his approximately three to four years working for that agency. But that is essentially what Defendants propose. And they appear to want to leave open the possibility of Jordan providing opinions of his choosing at trial during their case in chief.[2] Without further elaboration about Jordan's role or how Jordan's knowledge and

[2] By contrast, Klein was a principal drafter of the regulations governing the 8(a) Program as well as the SDVOSB Program. Klein has further served as the SBA's Suspension and Debarment Official in hundreds of actions over the years. Suspension and debarment proceedings relate to alleged violations of the very rules at issue in this case. Consequently, Klein is in a position to serve as an expert witness on the application of small business contracting rules to alleged violations of the rules relating to program eligibility and business integrity and to explain how the SBA would view the application of rules to specified facts.

experience otherwise justified the opinions he might offer as an expert witness, the Jordan Disclosure failed to comply with the requirement that Defendants provide *the basis and reasons* for *all* of Jordan's opinions. Moreover, it seems unlikely that Jordan will be able to provide bases and reasons for the opinions identified above. On what basis, for example, could Jordan opine on the subjective states of mind and knowledge of "most owners, operators, and employees of SBA program participants and their subcontractors"? Thus, the lack of compliance with this particular aspect of Rule 16's requirements spills into another area to be addressed later: whether Jordan's opinions should be viewed as reliable.[3]

[3] The Jordan Disclosure additionally disclosed that Jordan "recently served as an expert witness in several cases" and then identified his role in those cases as having testified in depositions "on multiple occasions" and before "[j]udges." (Ex. 2, p. 10.) But only two "examples" of cases were disclosed. Defendants have since informed the United States that Jordan had only testified as an expert witness at trial or by deposition in those two cases. Accordingly, the United States does not presently challenge the sufficiency of the Jordan Disclosure on the basis that it did not include a list of all other cases in which, during the previous four years, Jordan testified as an expert. The United States accepts and relies on Defendants' representation that those two cases form a complete list.

### B. Portions of Jordan's Purported Expert Testimony Are Facially Inadmissible.

Federal Rule of Evidence 702 concerns the admission of expert witness testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) that testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and,
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Accordingly, "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, i.e., reliability]; and (3) the expert's testimony must assist the trier of fact [, i.e., fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (citation omitted). The "overriding consideration with regard to these three requirements is that expert testimony should

be admitted if it will assist the trier of fact." *Tyger v. Precision Drilling Corp.*, 832 F. App'x 108, 112 (3d Cir. 2020) (citing *United States v. Velasquez*, 64 F.3d 844, 850 (3d Cir. 1995)).

District courts act as gatekeepers to ensure that the Rule 702 requirements are satisfied and that the proffered expert testimony is "both reliable and relevant, including under the standard laid down in [Federal Rule of Evidence] 403." *United States v. Williams*, 974 F.3d 320, 358 (3d Cir. 2020) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594–95 (1993)); *Schiff*, 602 F.3d at 172 (citation omitted). Because "expert evidence can be both powerful and quite misleading . . . . the importance of [the] gatekeeping function cannot be overstated." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283 (4th Cir. 2021) (quoting *Daubert*, 509 U.S. at 592; *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018)); *see also United States v. Ford*, 481 F.3d 215, 219 n. 6 (3d Cir. 2007) (cautioning district courts to "tread carefully when evaluating proffered expert testimony, paying special attention to the relevance prong")). Ultimately, the "proponent of expert testimony has the burden of establishing its admissibility [i.e., compliance with Rule 702's requirements] by a preponderance of the evidence." *VanDine v. Summit*

*Treestands, LLC*, 738 F. Supp. 3d 599, 610 (E.D. Pa. 2024) (citing *In re TMI Litig.*, 193 F.3d 613, 705 (3d Cir. 1999)); *Broe v. Manns*, No. 3:15CV985, 2016 WL 7048988, at *2 (M.D. Pa. Dec. 5, 2016) (citing *Daubert*, 509 U.S. at 593).

**1. Jordan's Anticipated Expert Testimony Consists of Unreliable Opinions.**

Rule 702's reliability threshold focuses on "whether the expert's methodology can be 'challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability.'" *United States v. Anderson*, 171 F.4th 232, 238 (3d Cir. 2026) (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment). To determine whether expert testimony is reliable, courts look for "rigor" and "whether the . . . testimony is supported by good grounds," rather than "mere haphazard, intuitive inquiry." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020). "An expert who [intends to] testif[y] primarily from experience must explain 'how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Trout v. Milton S. Hershey Med. Ctr.*, 576 F.Supp.2d 673, 676 (M.D. Pa. 2008) (quoting

*Suter v. Gen. Acc. Ins. Co. of Am.*, 424 F.Supp.2d 781, 788 (D.N.J. 2006)).

The Jordan Disclosure provides, in part, that Jordan may testify as follows:

- "[M]ost owners, operators, and employees of SBA program participants and their subcontractors were either unaware of all of the specific requirements of [pertinent SBA] regulations or were unaware of how the SBA or a contracting agency might interpret and apply those regulations."

- "[I]t was and is extremely challenging for program participants [i.e., small businesses] to secure bonding support for the sorts of contracts that help them develop and grow."

- "[N]ot every later circumstance that be inconsistent with a participant's compliance with the rules would be viewed as a false certification. As noted above, [M]ost owners, operators, and employees of participating concerns and subcontractors did not fully understand all of the specific requirements of the regulations, and the 'control' regulation has long been an area of particular difficulty for industry participants, especially during the relevant time."

(Ex. 2, pp. 2, 5.) Aside from the fact that Defendants have not identified the bases and reasons for these opinions, in violation Rule 16, it seems impossible that anyone could objectively gauge what "most" small businesses and subcontractors encountered or what they knew about certain regulations. Jordan cites to no rigorous surveys or testing from which such conclusions could be drawn. These "expert opinions" are the very type of subjective and conclusory opinions that must be excluded

because they are unable to be reasonably assessed for reliability. Consider the following: what if the United States now proposed a rebuttal witness with prior SBA experience simply to state the opposite of the foregoing conclusions? What would the Court do about those contrary opinions, and, more importantly, how would a jury weigh them, especially when they purport to opine on the collective state of mind and experiences of a large number of undefined third parties?

Defendants' design is clear. The purpose of these "expert opinions" is to convey impermissibly to the jury that small business program participants like Elstner Construction Company and their fellow travelers, such as Boone, McGuire, and Lauer, should be excused for violating program rules because they supposedly don't understand the rules, it is challenging for them to obtain bonding (which Defendants want the jury to believe is an excuse for violating the rules), and, at any rate, the SBA purportedly takes a soft and understanding approach to rules violations due to this lack of understanding.

If a Defendant wants to testify that he did not understand the rules,

he may do so. For her part, Davis, the 8(a) participant at the heart of this case, has admitted *knowingly* violating the program rules through a conspiracy with remaining Defendants. The Jordan Disclosure identified no factual basis on which to offer an "expert opinion" that anyone in this case was confused about the rules, and the information that is available to the Court is thus at odds with any such assertion. Moreover, if there were admissible evidence of Defendants' actual states of mind or experiences, and that evidence demonstrated confusion, what would be the purpose of an "expert opinion" about the collective experiences of other persons who are not a part of this case? Consequently, without elaboration that would tie these opinions to Jordan's knowledge and experience, the Court should deem them improper and excluded.[4]

**2. Jordan's Anticipated Expert Testimony Includes Information that Is Not a "Fit" With the Case.**

[4] The United States notes that some of the same problems are present in the expert disclosure for proposed defense witness Trevor Skelly, including the language about what "most" people knew or understood about the SBA's rules governing small business programs. Such testimony should likewise not be permitted from Skelly.

When evaluating "fit," "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Federal Rule of Evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. "[A]n expert who renders an opinion based on factual assumptions not present in the case or opines on a matter that does not relate to a disputed issue is not relevant and . . . will not assist the trier of fact, as required by Rule 702." *State Farm Fire and Casualty Co. v. PPL Elec. Utils. Corp.*, No. 1:23-CV-01661, 2026 WL 881187, *3 (M.D. Pa. Mar. 31, 2026) (citing *Daubert*, 509 U.S. at 591–92).

The inquiry also encompasses the standards under Rule 403. Rule 403 provides that courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury." FED. R. EVID. 403.

According to the Jordan Disclosure, Jordan intends to testify, in part that:

> [M]ost owners, operators, and employees of SBA program participants and their subcontractors were either unaware of all of the specific requirements of the [SBA Program] regulations or were unaware of how the SBA or a contracting agency might interpret and apply those regulations.
>
> . . .
>
> It was the SBA's custom and practice to provide opportunities for education and assistance when non-compliance was suspected or discovered, depending on the circumstances. If the SBA determined that a violation of a particular rule may warrant a sanction, the business concern(s) implicated could be entitled to a hearing to determine whether a violation occurred and, if so, what sanction, if any, was warranted. SBA officials would consider regulatory text and interpretation, voluminous precedent, and the totality of the circumstances to decide whether a violation occurred. The same factors, plus whether the violation was knowing or intentional, would influence a sanction decision.
>
> . . .
>
> If the SBA had received an indication of non-compliance, whether from its own review, a contracting office, or a protest, it would have made further inquiries. If those inquiries determined that a contractor had not complied with the applicable limitation, the SBA had several options available to it, including doing nothing, assisting the contractor to come into compliance, and initiating a hearing over the contractor's "responsibility." The contractor would not automatically be found non-responsible and would not automatically lose the contract.

> The SBA understood at the relevant time that it was necessary and common for program participants to hire individuals for specific contracts or tasks. SBA's view of the practice did not change if those individuals were hired from subcontractors that were already working at the contract location, a practice sometimes called "rebadging." Indeed, "rebadging" was not only common, but often preferred, as it maintained continuity, quality, and performance expectations. Mr. Jordan is not aware of any regulation or rule or policy that prohibited this practice, even if done in part or in whole to meet a subcontracting limitations percentage. The governing question in such a case, from the SBA's perspective, would be whether the hired individuals would be considered employees of the program participant pursuant to 13 C.F.R. § 121.106, which for its part, sets a totality of the circumstances test, which is quite subjective and does not lend itself to easy compliance determinations.
>
> . . .
>
> [M]ost owners, operators, and employees of participating concerns and subcontractors did not fully understand all of the specific requirements of the regulations, and the 'control' regulation has long been an area of particular difficulty for industry participants, especially during the relevant time.

(Ex. 2, pp. 2–4, 5.) This information is largely non-relevant to the issues in the case, and it substantially risks jury confusion, misleading the jury, and unfair prejudice to the United States.

A major unspoken premise of the Jordan Disclosure is that this is a case where individuals accidentally colored outside the lines and truthfully disclosed what they were doing in advance of doing it because it was their intent all along to follow the rules. As a result, Defendants want the jury to hear that, in their telling, the majority of small business program participants and their associates do not understand the rules, so it is therefore understandable that they, too, did not understand the rules. Finally, Defendants want the jury to hear that because the majority of people do not understand the rules, the SBA's response to rule violations is to focus patiently on getting people back into compliance with the rules, not to punish rulebreakers. In short, the jury should rest assured that the SBA does not really care about situations like the one involving Defendants.

This case is not about the standards that the SBA applies when deciding what form of punishment or sanction to apply to technical or accidental rule violations that it actually knows about. Similarly, the jury's role in this case is not to decide whether a particular sanction would be reasonable in light of a specified, unintentional rule violation. Instead, it is the jury's role to determine whether Defendants, as alleged,

committed fraud to obtain federal government contracts through a scheme that they understood violated SBA small business program rules. As a result, it is irrelevant for the jury to know what the SBA would have done in a counterfactual scenario involving violations of the rules that the SBA knew about—especially when the unmistakable undertone, if not clear purpose, of the Jordan Disclosure is to convey that these were, in fact, unintentional violations.

Beyond that, even if there were some probative value to Jordan's proposed testimony, that minimal probative value is substantially outweighed by its prejudicial effect. For the same reasons identified above, allowing Jordan to testify as an expert about what the SBA could or would have done if it had known about rule violations runs a substantial risk of misleading and confusing the jury. For one, it risks conveying to the jury that the SBA *did* know about the alleged rule violations in this case.[5] And it risks the further inference that if the SBA

---

[5] If Defendants intend to have Jordan assume that the SBA did know about rule violations in this case, they must identify the factual basis and reasons for that proposed expert opinion. Providing that information would likely elucidate why Jordan's testimony on this topic is not permissible.

did not do anything about the rule violations in real time, it must be because Defendants did not do anything unlawful.

Also, this is not a case involving so-called "rebadging." Jordan characterizes "rebadging" as the practice of program participants hiring individuals from subcontractors that are already working at a contract location. If Jordan is planning to apply that benign characterization to the facts of this case, he must disclose what specific facts he is relying on to reach that conclusion. That will allow the Court to exercise its gatekeeping function to determine whether the "fit" is appropriate between the assumed facts and the proposed testimony. It will also allow the United States to prepare for cross-examination, particularly as it relates to which facts Jordan is taking into consideration and which facts he is not taking into consideration. As the Court is aware, Davis made numerous specific admissions about the movement of laborers onto her company's payroll, and there will be evidence at trial supporting those admissions. Is Jordan going to weigh those facts in his discussion of rebadging, or is he disregarding them? The Jordan Disclosure does not say.

Jordan also claims that "'rebadging' was not only common, but also preferred, as it maintained continuity, quality, and performance expectations." The Jordan Disclosure is deficient as it fails to provide the "reasons and bases" for his definition of rebadging, where in Jordan's "knowledge and experience" one would go to understand his basis for testifying as an expert about rebadging, and who it is that "preferred" rebadging.

Finally, Federal Rule of Evidence 704(b) provides that, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Yet, there are several aspects of Jordan's proposed testimony that are clearly not permissible because they seek to substitute expert testimony for evidence of Defendants' state of mind. The most striking example is Jordan's purported expert testimony about what "most owners, operators, and employees of SBA program participants and their subcontractors" knew or were aware of. This testimony would mislead the jury and result in unfair prejudice to the United States. It would convey to the jury via expert testimony that

Defendants must have acted in good faith without Defendants actually testifying about their respective states of mind or why they took certain actions. That substantial risk is aggravated by additional proposed statements, such as the supposed difficulty that small business program participants have in obtaining bonding, which is not a defense to the allegation that one has knowingly engaged in fraud and is therefore not even relevant at trial.

Fundamentally, Defendants' substitution of testimony through Jordan is impermissible. *See United States v. Korbe*, No. 2:09-CR-00005, 2010 WL 4639042, *3 (W.D. Pa. Nov. 8, 2010) ("[A]n expert opinion cannot be used as a substitute for the Defendant's testimony that she was not aware that police officers had entered her home and / or that he thought she was being invaded by malevolent intruders"); *see also United States v. Rider*, No. 4:20-CR-232, 2022 WL 2813719, *2 (E.D. Tex. July 18, 2022) (excluding expert testimony focused on the defendant's state of mind and character to form the requisite intent because that was "a subject matter that the jury [wa]s capable of evaluating without the assistance of an expert"); *United States v. Ji*, No. 18-CR-611, 2022 WL 3081868, *6 (N.D. Ill. Aug. 3, 2022) ("To the extent Defendant seeks to

use Clarke to bolster his argument to the jury regarding his intent, beliefs, or emotions, such testimony is undoubtedly unduly prejudicial for two reasons: it not only substitutes a law professor's testimony for that of Defendant, but it in turn also deprives the government of an opportunity to cross-examine Defendant (who may elect not to testify) about his 'intent, interest, or willingness' and the reasons he felt 'scared' and 'threatened'").

## CONCLUSION

For these reasons, the Court should grant the United States' motion *in limine* and exclude Jordan's expert testimony. At the very minimum, the Court should order Defendants to provide a supplemental Rule 16 disclosure for Jordan that complies with its plain requirements.

Dated: September 4, 2026

Respectfully submitted,

BRIAN D. MILLER
United States Attorney

/s/ K. Wesley Mishoe
K. Wesley Mishoe (PA 321983)
Assistant United States Attorney
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Tel: (717) 221-4482
kenneth.mishoe@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing brief was served on all counsel of record via ECF.

/s/ K. Wesley Mishoe
K. Wesley Mishoe
Assistant United States Attorney

Dated: September 4, 2026