UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 1:22-CR-00426 |
| | ) | |
| v. | ) | (Judge Wilson) |
| | ) | |
| SCOTT E. BOONE, *et al.*, | ) | |
| Defendants. | ) | (Electronically Filed) |

# BRIEF IN SUPPORT OF MOTION *IN LIMINE*

BRIAN D. MILLER
United States Attorney

/s/ K. Wesley Mishoe
K. Wesley Mishoe (PA 321983)
Assistant United States Attorney
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Tel: (717) 221-4482
kenneth.mishoe@usdoj.gov

# TABLE OF CONTENTS

Background.................................................................................3

Argument.....................................................................................4

A. The Skelly Disclosure Did Not Conform to the Disclosure Obligations Under Federal Rule of Criminal Procedure 16...4

1. The Skelly Disclosure Did Not Provide the United States with "All" Opinions that Defendants Might Elicit from Skelly ....................................................6

2. The Skelly Disclosure Did Not Include Bases and Reasons for All of Skelly's Opinions ..............................9

B. Portions of Skelly's Purported Expert Testimony Are Facially Inadmissible ...............................................14

1. Skelly's Anticipated Expert Testimony Will Not Assist the Jury In Performing Its Factfinding Role. It Will Intrude on the Jury's Role .........................................16

2. Skelly's Anticipated Expert Testimony Consists of Unreliable Opinions ..................................................18

3. Skelly's Anticipated Expert Testimony Includes Information that Is Not a "Fit" with the Case ............21

Conclusion .................................................................................29

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Broe v. Manns*,
No. 3:15CV985, 2016 WL 7048988 (M.D. Pa. Dec. 5, 2016) ................ 15

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ................................................................ 14, 15, 21

*Green Machine Corp. v. Zurich Am. Ins. Gr.,*
No. CIV. A. 99–3048, 2001 WL 1003217 (E.D. Pa. Aug. 24, 2001) ..... 23

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999) ................................................................ 15

*Sardis v. Overhead Door Corp.*,
10 F.4th 268 (4th Cir. 2021) ........................................................ 15, 26

*Schneider ex rel. Estate of Schneider v. Fried*,
320 F.3d 396 (3d Cir. 2003) ................................................................ 20

*State Farm Fire and Casualty Co. v. PPL Elec. Utils. Corp.*,
No. 1:23-CV-01661, 2026 WL 881187 (M.D. Pa. Mar. 31, 2026) ... 20, 25

*Summit Treestands, LLC*,
738 F. Supp. 3d 599 (E.D. Pa. 2024) .................................................. 15

*Suter v. Gen. Acc. Ins. Co. of Am.*,
424 F.Supp.2d 781 (D.N.J. 2006) ........................................................ 18

*Trout v. Milton S. Hershey Med. Ctr.*,
576 F.Supp.2d 673 (M.D. Pa. 2008) .................................................... 18

*Tyger v. Precision Drilling Corp.*,
832 F. App'x 108 (3d Cir. 2020) .......................................................... 14

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
949 F.3d 825 (3d Cir. 2020) ........ 18

*United States v. Anderson*,
171 F.4th 232 (3d Cir. 2026) ........ 17

*United States v. Barton*,
909 F.3d 1323 (11th Cir. 2018) ........ 15

*United States v. Bressi*,
No. 4:19-CR-207, 2024 WL 3296938 (M.D. Pa. July 3, 2024) ........ 9

*United States v. Ford*,
481 F.3d 215 (3d Cir. 2007) ........ 15

*United States v. Hertel & Brown Physical and Aquatic Therapy*,
No. 1:21-CR-39, 2025 WL 641233 (W.D. Pa. Feb. 27, 2025) ........ 8

*United States v. Ji*,
No. 18-CR-611, 2022 WL 3081868 (N.D. Ill. Aug. 3, 2022) ........ 23

*United States v. Korbe*,
No. 2:09-CR-00005, 2010 WL 4639042 (W.D. Pa. Nov. 8, 2010) ........ 22

*United States v. Mrabet*,
703 F. Supp. 3d 442 (S.D.N.Y. 2023) ........ 10

*United States v. Rider*,
No. 4:20-CR-232, 2022 WL 2813719 (E.D. Tex. July 18, 2022) ........ 23

*United States v. Schiff*,
602 F.3d 152 (3d Cir. 2010) ........ 14

*United States v. Velasquez*,
64 F.3d 844 (3d Cir. 1995) ........ 14

*United States v. Williams*,
974 F.3d 320 (3d Cir. 2020) ........ 14

*Wolfe v. Allstate Property & Casualty Ins. Co.*,
No. 4:10-CV-800, 2012 WL 12929814 (3d Cir. 2020) .......................... 23

**<u>Rules</u>**

FED. R. CRIM. P. 16 .......................................................... 5
FED. R. EVID. 401 .......................................................... 20
FED. R. EVID. 403 .......................................................... 21
FED. R. EVID. 702 .......................................................... 14
FED. R. EVID. 704 .......................................................... 27

In advance of trial, Defendants served the United States with an expert-witness disclosure for Trevor Skelly (the "Skelly Disclosure"), who has not previously been accepted as an expert or provided expert testimony in any matter. The Skelly Disclosure fails to conform to the clear disclosure obligations under Federal Rule of Criminal Procedure 16. Accordingly, the full scope of Skelly's anticipated opinion testimony remains unclear. Even more importantly, it is unclear why his opinions should be accepted as reliable. Defendants' disclosure is, however, clear about the ultimate aim: Skelly purports to be able to testify about what all contracting officers really cared about and what they did not care about. Defendants' goal is to have the Court accept Skelly as an expert and use that "expert" testimony to override the testimony of actual fact witnesses in this case, including contracting officers who worked at Letterkenny Army Depot ("Letterkenny"). Defendants aim to convey impermissibly to the jury that certain misrepresentations were not material because Skelly, as an "expert" contracting officer, can assure the jury that contracting officers would not have viewed certain misrepresentations as misrepresentations at all, and, even if they were misrepresentations, would not have cared about them. But what makes

Skelly's proposed testimony reliable expert opinion, as opposed to just *his* opinion? And if Skelly should be credited as an expert capable of speaking for all contracting officers at Department of Defense facilities, then why should the Court not equally credit all of the contracting officers who actually worked at Letterkenny during the relevant time period, some of whom may appear as fact witnesses, as experts? And if the latter disagree with Skelly about what issues or arguable misrepresentations may have been matters of concern, where does that leave the jury? At best, deeply confused.

The Court must categorically exclude Skelly as a proposed expert due to this fundamental defect. Moreover, portions of Skelly's proposed expert testimony are clearly unreliable, will not be helpful for the jury, and are substantially more prejudicial than probative. Therefore, as discussed in more detail below, the Court should grant the United States' motion *in limine* to exclude Skelly from testifying as an expert. At the very minimum, the Court should order Defendants to promptly serve the

United States with a disclosure for Skelly that complies with Rule 16. If Skelly were pressed on the "bases and reasons" for his opinions, which were not adequately disclosed, it would likely become apparent why he should not be credited as an expert in this case.

## BACKGROUND

On December 15, 2022, a federal grand jury returned an indictment against Defendants and Rebecca J. Davis for Count 1 – conspiracy to commit major fraud against the United States and Counts 2 through 6 – major fraud against the United States. (Doc. 1.) At Counts 7 and 8, the Indictment included additional charges against Defendants for conspiracy to commit major fraud against the United States and major fraud against the United States, respectively. (*Id.*) Since then, Davis pleaded guilty to Count 1 of the Indictment. (Doc. 316.)

A federal grand jury has also since returned a superseding indictment. (Doc. 340.) The Superseding Indictment included the same charges against Defendants but added factual detail consistent with the contents of the United States' amended bill of particulars. (*See* Doc. 343 (*Notice*.))

With respect to Counts 1–6, Defendants are accused of conspiring to participate, and participating, in a fraud scheme to obtain millions of dollars' worth of construction contracts at Letterkenny that were set aside for eligible small businesses participating in the Small Business Administration's 8(a) Program. Similarly, under Counts 7–8, Defendants are accused of conspiring to participate, and participating, in a fraud scheme to obtain a contract from the Salem Veteran's Affairs Medical Center (the "Salem VA") that was set aside under the SBA's Service-Disabled Veteran Owned Small Business ("SDVOSB") Program.

A jury trial is scheduled to begin on October 13, 2026. (Doc. 207.) Ahead of trial, Defendants provided the United States with the Skelly Disclosure, averring that they might offer him as an expert at trial "in the area of the Department of Defense and contracts with small businesses through the [SBA]." (Ex. 1, p. 2.) Because the Skelly Disclosure did not comply with the bright-line requirements under Federal Rule of Criminal Procedure 16 and lays out inadmissible testimony, the United States timely filed a motion *in limine*. This supporting brief follows.

## ARGUMENT

### A. The Skelly Disclosure Did Not Conform to the Disclosure Obligations Under Federal Rule of Criminal Procedure 16.

Federal Rule of Criminal Procedure 16 requires defendants to disclose, in writing: (i) "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief"; (ii) "the bases and reasons" for the opinions; (iii) the proposed "witness's qualifications, including a list of all publications authored in the previous 10 years"; and, (iv) "a list of all other cases in which during the previous [four] years, the witness . . . testified as an expert at trial or by deposition." FED. R. CRIM. P. 16(b)(1)(C)(i), (iii).[1] These disclosure obligations were "intended to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." FED. R. CRIM. P. 16, advisory committee's note to 2022 amendment. They were also imposed

[1] Skelly has not previously been credited as an expert witness and has not testified as an expert witness before. Thus, the adequacy of Defendants' disclosure is not an issue in that regard. Regarding publications, it does not appear from Skelly's résumé that he has any publications relevant to his proposed expert testimony. If there are any, Defendants do not highlight them as supporting his proposed testimony.

via amendment in 2022 to address "shortcomings of the prior provisions on expert witness disclosure," including "the lack of adequate specificity regarding what information must be disclosed." *Id.*

When a defendant fails to adhere to the Rule 16 disclosure obligations, the Court should prohibit the defendant from introducing the proffered witness as an expert or otherwise exclude portions of the witness' proposed expert testimony. *See* FED. R. CRIM. P. 16(d)(2). Court intervention is needed to address the deficiencies in the Skelly Disclosure.

**1. The Skelly Disclosure Did Not Provide the United States with "All" Opinions that Defendants Might Elicit from Skelly.**

The Skelly Disclosure initially appeared to indicate that Defendants withheld Skelly's expert opinions responding to opinions in the United States' disclosure for its proposed expert witness, John Klein (the "Klein Disclosure"). Specifically, despite otherwise identifying Skelly as a possible expert witness in their case-in-chief, Defendants provided the following:

> Skelly may . . . testify in ***rebuttal*** to the opinions and testimony stated in the government's expert disclosure that are actually introduced at trial. These would not be opinions in the defense case-in-chief, because they depend on what evidence is ultimately introduced (in terms of expert/summary testimony and exhibits), and so they are not all addressed in this Rule 16 disclosure. The defense reserves the right to present at trial such rebuttal testimony based on the government's presentation and other future developments.

(Ex. 1, pp. 1, 5 (emphasis added).) For that reason, the United States asked Defendants to clarify their position on Skelly, specifically asking for confirmation that "defendants' position is that the Skelly disclosure contains all opinions that Skelly may offer at trial, assuming that Klein testifies in a manner that is consistent with the government's expert disclosure from last month." Defendants provided the unclear response, "As with Jordan, we believe Mr. Skelly's . . . disclosure complied with the Rules." Notwithstanding that statement, it appears that Skelly has potentially formed and will later offer additional opinions responsive to what Klein is expected to testify about, as described in the detailed Klein Disclosure. Rule 16 requires the disclosure of those opinions, and the bases and reasons for them, now. At minimum, Defendants' ambiguous response leaves open the question of whether there is more lurking in the background.

Take the following as just one example. The Skelly Disclosure states, "In this case, Mr. Skelly may testify that he has reviewed the contracts at issue in this case, along with the proposals and certain documents from the contract files, and he did not observe any *glaring or acute reasons* to question whether the Limitations on Subcontracting were being met." (Ex. 1, p. 4 (emphasis added).) What does that mean, especially coming from a purported expert? The clear implication is that there are certain "glaring or acute reasons" that a contracting officer would know to look for, and those were in Skelly's opinion not present in this case, but Skelly offers no clarity on what any of those "glaring or acute reasons" may be. When the United States asked Defendants to clarify this point specifically, Defendants again asserted that their disclosure was adequate.

As counsel for some of Defendants know from their involvement in the cited case that follows, [p]resumably, if [Defendants] call[] [Skelly] as an expert witness, it will be during [their] case-in-chief, and [their] disclosure . . . acknowledges as much." *United States v. Hertel & Brown Physical and Aquatic Therapy*, No. 1:21-CR-39, 2025 WL 641233, *1 (W.D. Pa. Feb. 27, 2025). "Therefore, irrespective of how [Defendants]

characterize [Skelly's] testimony, the disclosure requirements of Rule 16 would seem to apply." *Id.* Thus, Defendants, cannot pocket Skelly's opinions for use at trial by invoking the concept of "rebuttal."

There is no defense "rebuttal." The United States will present its case in chief, and defendants may then present their own case in chief, and the United States will then have the opportunity for rebuttal. This explains why Rule 16, which speaks in no uncertain terms, requires Defendants to provide the United States with a complete statement of "all" of Jordan's expert opinions, without reserving anything for so-called defense rebuttal.

What is more, Defendants have already been put on notice of "all" expert opinions that Klein will offer at trial, in the United States' case-in-chief. Accordingly, there is no reason why Defendants cannot identify in advance of trial "all [responsive] opinions" that Skelly might harbor. (*See also* Ex. 1, p. 5 (acknowledging that Skelly's testimony and opinions were based in part on "the Klein Report and documents referenced therein.")) Furthermore, without knowing what opinions Skelly might offer at trial in response to Klein's expert opinions, the United States cannot fully satisfy its own obligation to serve notice on Defendants about

what Klein's testimony might be "to counter [Skelly's] testimony." *See* FED. R. CRIM. P. 16(a)(1)(G)(iii).

**2. The Skelly Disclosure Did Not Include Bases and Reasons for All of Skelly's Opinions.**

Defendants propose calling Skelly as an expert based on his "knowledge and experience, including his [15] years as a contracting officer." (Ex. 1, p. 5.) But to satisfy Rule 16's disclosure obligations, Defendants "must explain how that [knowledge and] experience leads to . . . conclusions reached, why that [knowledge and] experience is a sufficient basis for [an] opinion, and how that [knowledge and] experience is reliably applied to . . . facts." *United States v. Bressi*, No. 4:19-CR-207, 2024 WL 3296938, *11 (M.D. Pa. July 3, 2024) (citations omitted). It is not enough for Defendants to rely upon a boilerplate statement that expert testimony would be derived from a proposed witness' "knowledge and experience." *See United States v. Mrabet*, 703 F. Supp. 3d 442, 444 (S.D.N.Y. 2023) (finding that, absent elaboration, the representation that purported expert testimony would be "based on [the witness'] training, education, and experience, including his 37 years as a law enforcement

officer primarily involved in investigating narcotics trafficking" was a "patent evasion" of Rule 16's requirement that the bases and reasons for expert opinion be provided).

Skelly never worked at Letterkenny (or, apparently, another U.S. Army facility) and has no experience using the "Job Order Contracting Guide" for Letterkenny dated January 2003, which he purports to interpret as an expert contracting officer. Skelly's résumé shows that he was a "contracting officer" for the U.S. Navy for less than three years (from October 2010 to March 2013) and then for U.S. Central Command for less than one year (from April 2013 to March 2014). Importantly, nothing in Skelly's résumé indicates that he had responsibility for actively managing any SBA 8(a) Program contracts during his time as a contracting officer. In fact, very little in his résumé demonstrates any involvement with either the 8(a) Program or SDVOSB Program, except that Skelly has had "8(a) companies" as clients since becoming a private consultant approximately five years ago. (Ex. 1, *see* "Legal Experience" with Nautes Consulting, LLC.) It is thus unclear how Defendants conclude that Skelly spent "fifteen years as a Contracting Officer," how Defendants conclude that Skelly is in a position to opine as an expert on

how all contracting officers at all Department of Defense facilities would manage contracts awarded to 8(a) Program or SDVOSB Program participants, or how Skelly can say what would or would not matter to contracting officers managing 8(a) contracts or SDVOSB contracts specifically.

Furthermore, in the Skelly Disclosure, Defendants made no attempt to tether Skelly's purported "knowledge and experience" to conclusions and opinions that Skelly has reached. That is especially true as it concerns his purported expert testimony that:

- "[T]he Contracting Office would not be focused on matters of SBA eligibility or compliance."

- As long as a job was getting "done, with quality, on time, and at the awarded price," a Contracting Officer "might not be"[2] concerned with whether: (i) "project managers were employees or sub-contractors of the SBA contractor"; (ii) "project managers were simultaneously doing the same or similar work for another contractor, even another SBA contractor"; (iii) "individuals were hired from a subcontractor who was already performing work on the job site"; (iv) "the same individual appeared one month on a

[2] Skelly's claim that certain factors "might not be" of concern to contracting officers seems to suggest equally that they *might be* of concern to contracting officers. Therefore, putting aside whether other contracting officers with actual experience at Letterkenny might disagree with Skelly, Skelly's own statement on this subject is likely to be confusing to the jury rather than assisting them.

subcontractor's payroll, and then the next month on the contractor's payroll"; and, (v) "several contractors worked with the same consultant for different jobs, and that consultant represented himself / herself variously as a representative of each of those contractors depending on the job."

- "[M]ost owners, operators, employees of participating concerns and subcontractors did not fully understand the regulations governing the Limitations on Subcontracting."

- "[I]t would not have made a difference to a Contracting Officer, in terms of performance and payment, whether the individuals listed as 'Elstner's Management Team' were in fact the individuals who would be doing the proposed work."

- "[I]t would not have made a difference to a Contracting Officer whether the individuals listed in [a contract] Addendum . . . were employees of a subcontractor prior to or after being on the payroll of Elstner Construction."

(Ex. 1, pp. 2–3, 4.) Without further elaboration on how Skelly's knowledge and experience justify these opinions, the Skelly Disclosure did not comply with the requirement that Defendants provide the *basis and reasons* for *all* of Skelly's opinions.

The lack of basis and reasons for these opinions highlights a further problem. As with Jordan, on what basis could Skelly opine on the subjective states of mind and knowledge of "most owners, operators, and employees of SBA program participants and their subcontractors"? The

United States is thus left to guess how these opinions are justified. In turn, without additional information surrounding the bases and reasoning for these opinions, the Court cannot perform its important gatekeeping function in accordance with Federal Rule of Evidence 702 and case law, *infra*. Requiring defendants to disclose the basis and reasons for such opinions is not only imperative, but it will also illustrate why such opinions are not reliable, as discussed further below.

### B. Portions of Skelly's Purported Expert Testimony Are Facially Inadmissible.

Federal Rule of Evidence 702 concerns the admission of expert witness testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) that testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and,
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Accordingly, "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, i.e., reliability]; and (3) the expert's testimony must assist the trier of fact [, i.e., fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (citation omitted). Of course, the "overriding consideration with regard to these three requirements is that expert testimony should be admitted if it will assist the trier of fact." *Tyger v. Precision Drilling Corp.*, 832 F. App'x 108, 112 (3d Cir. 2020) (citing *United States v. Velasquez*, 64 F.3d 844, 850 (3d Cir. 1995)).

District courts act as gatekeepers to ensure that the Rule 702 requirements are satisfied and that the proffered expert testimony is "both reliable and relevant, including under the standard laid down in [Federal Rule of Evidence] 403." *United States v. Williams*, 974 F.3d 320, 358 (3d Cir. 2020) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594–95 (1993)); *Schiff*, 602 F.3d at 172 (citation omitted). Because "expert evidence can be both powerful and quite misleading . . . . the importance of [the] gatekeeping function cannot be overstated." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283 (4th Cir. 2021) (quoting

*Daubert*, 509 U.S. at 592; *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018)); *see also United States v. Ford*, 481 F.3d 215, 219 n. 6 (3d Cir. 2007) (cautioning district courts to "tread carefully when evaluating proffered expert testimony, paying special attention to the relevance prong")). Ultimately, the "proponent of expert testimony has the burden of establishing its admissibility by a preponderance of the evidence." *VanDine v. Summit Treestands, LLC*, 738 F. Supp. 3d 599, 610 (E.D. Pa. 2024) (citing *In re TMI Litig.*, 193 F.3d 613, 705 (3d Cir. 1999)); *Broe v. Manns*, No. 3:15CV985, 2016 WL 7048988, at *2 (M.D. Pa. Dec. 5, 2016) (citing *Daubert*, 509 U.S. at 593).

### 1. Skelly's Anticipated Expert Testimony Will Not Assist the Jury In Performing Its Factfinding Role. It Will Intrude on the Jury's Role.

Expert testimony is supposed to assist the jury to perform its own responsibilities, including, perhaps most importantly, factfinding. The plain objective of Skelly's testimony is to communicate to the jury that certain statements either were not misrepresentations at all or were not material, even if they were arguably misrepresentations. This impermissible sleight of hand will be accomplished by having Skelly tell the jury that he, as an expert, can assure them that no contracting officer

would have cared about certain facts, even if true, because all that mattered was whether the work was getting done; consequently, any statements made by Defendants about those facts were immaterial, irrespective of whether they were true or false. (*See* Ex. 1, p. 2–3 (listing bullet points before concluding that "these types of circumstances by themselves would have be a cause for concern").)

Determining whether something constitutes a misrepresentation and whether it is material is a role for the jury alone. To be clear, Skelly is *not* going to interpret some term of art at issue in the case—for example, a technical term used in the contracts covered by the charged conduct—in order to assist the jury to determine whether a statement constituted a misrepresentation or whether an alleged misrepresentation was material. That type of testimony could potentially be permissible "industry custom and practice" testimony.

Skelly's proposed testimony is not that. Skelly, by contrast, is going to tell the jury in a slightly veiled manner that, as an expert, he can assure them that certain statements were not misrepresentations and would not have been of concern even if they were. This is not assisting the jury to perform its own role; this is simply telling the jury which conclusions to reach because an expert says so.

Moreover, there are actual contracting officers who worked at Letterkenny and the Salem VA that Defendants may call to testify, and they will be required to testify under oath. If it's actually true that all contracting officers would have been unconcerned with certain facts, those contracting officers with actual firsthand knowledge of the relevant facts can say so. And Defendants may use documents like the Job Order Contracting Guide to test those witnesses' testimony, if Defendants so choose. Instead, Defendants propose to call Skelly as a friendly witness because they are likely concerned that the actual contracting officers in this case will not sing from Defendants' sheet music, and they instead want Skelly to dictate to the jury certain factual conclusions that they want the jury to reach. That must not be permitted.

### 2. Skelly's Anticipated Expert Testimony Consists of Unreliable Opinions.

Rule 702's reliability threshold focuses on "whether the expert's methodology can be 'challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability.'" *United States v. Anderson*, 171 F.4th 232, 238 (3d Cir. 2026) (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment). To determine whether expert testimony is reliable, courts look for "rigor" and "whether the . . . testimony is supported by good grounds," rather than "mere haphazard, intuitive inquiry." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020). "An expert who [intends to] testif[y] primarily from experience must explain 'how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Trout v. Milton S. Hershey Med. Ctr.*, 576 F.Supp.2d 673, 676 (M.D. Pa. 2008) (quoting *Suter v. Gen. Acc. Ins. Co. of Am.*, 424 F.Supp.2d 781, 788 (D.N.J. 2006)).

Here, aside from the fact that Defendants have not identified the bases and reasons for Skelly's opinions identified above, in violation Rule 16, it seems impossible that anyone could objectively gauge what "most" small businesses and subcontractors knew about certain contracting regulations. Moreover, the above-referenced opinions, without more, appear wholly subjective and conclusory, unable to be reasonably assessed for reliability. Consequently, without elaborating on what would tie the above-referenced opinions to Skelly's knowledge and experience, the Court should deem them unreliable and inadmissible.

Additionally, in exercising its significant gatekeeping function, the Court must consider how it is possible that Skelly can say that all contracting offices and contracting officers would not "be focused on matters of SBA eligibility or compliance" and would not be concerned with the various circumstances that Defendants identified in the Skelly Disclosure. (Ex. 1, pp. 2–3, 4.)

What about in this case, where Defendants are specifically alleged to have engaged in fraud to create the appearance of SBA eligibility and compliance? Is Skelly's opinion really going to be that all contracting officers at all Department of Defense facilities would have been unconcerned to learn that individuals were engaged in such conduct because SBA eligibility and compliance was not their main "focus"? How does that even pass the smell test for proposed expert testimony? Defendants' position is especially concerning when Skelly apparently did not have experience managing 8(a) or SDVOSB contracts during his tenure as a contracting officer (or, at minimum, did not disclose anything to that effect). Without grounds connecting these opinions to Skelly's knowledge and experience, those opinions appear to be the type of subjective, conclusory opinions that cannot be objectively challenged.

Defendants will likely double-down on the claim that Skelly's "knowledge and experience" permit him to testify to industry custom regarding what a contracting officer would care about and what that person would not care about. But if there are multiple witnesses at trial with such "knowledge and experience"—including some with much greater industry knowledge and experience who actually worked at

Letterkenny and used the Job Order Contracting Guide—will all of them be credited as experts? If not, why not? And if all of them purport to be able to say what all contracting officers at all Department of Defense facilities would have cared about and not cared about, in sweeping terms, what will provide the jury's measure of reliability? Again, the proposed Skelly testimony is not about the interpretation of some specialized term of art known only to contracting officers, or something of a similar nature. It appears to be little more than a subjective, conclusory opinion. In short, it seems that so-called "expert testimony," whether framed around "industry custom and practice" or otherwise, will be of limited utility in this respect, and in fact carries a substantial risk of confusing the jury, rather than assisting it to perform its role.

**3. Skelly's Anticipated Expert Testimony Includes Information that Is Not a "Fit" with the Case.**

When evaluating "fit," "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Federal Rule of Evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."

FED. R. EVID. 401. "[A]n expert who renders an opinion based on factual assumptions not present in the case or opines on a matter that does not relate to a disputed issue is not relevant and . . . will not assist the trier of fact, as required by Rule 702." *State Farm Fire and Casualty Co. v. PPL Elec. Utils. Corp.*, No. 1:23-CV-01661, 2026 WL 881187, *3 (M.D. Pa. Mar. 31, 2026) (citing *Daubert*, 509 U.S. at 591–92).

The instant inquiry also encompasses the standards under Rule 403. Rule 403 provides that courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury." FED. R. EVID. 403.

Skelly's proposed testimony will be highly misleading and confusing. Let's assume that the Court can get past the significant reliability problem and accept Skelly's assertion that a contracting officer is primarily concerned about getting work done. So what? Does that mean that a contracting officer would be unconcerned to learn that there were misrepresentations and acts of concealment undertaken to create the false appearance of compliance with rules governing SBA programs, which is the fundamental allegation in this case? And could Skelly really

testify in that manner in a case involving *contracts that could only be awarded to eligible small businesses in specific SBA programs*? And if that is not going to be Skelly's position, what is the value of talking about getting the work done, if not to convey to the jury the false message that contracting officers are and should be unconcerned with SBA rules?

This improper purpose is further illustrated by several other proposed areas of testimony. Skelly seeks to testify that . . .

> . . . he is not aware of any duty to disclose in any of the technical proposals for the contracts at issue in this case, whether from the solicitations or some other regulation or requirement: (a) the existence or role of Bon Secour, because the solicitations asked for the individuals; (b) whether any particular individuals were part of Bon Secour or some other entity, or (c) whether any individuals who would be hired by Elstner for the job came from some other payroll previously.

(Ex. 1, p. 5.). First of all, this is an impermissible effort to use an expert to argue that certain omissions were not material by having him testify that there was no "duty to disclose" in the first place. Defendants may not use a purported expert to establish either the existence or non-existence of any legal duty. *See Wolfe v. Allstate Property & Casualty Ins. Co.*, 2012 WL 12929814, *3 (M.D. Pa. July 23, 2012) ("[I]f an expert may not testify as to the existence of a legal duty, he likewise may not testify as to the nonexistence of a legal duty."); *Green Machine Corp. v.*

*Zurich Am. Ins. Gr.*, 2001 WL 1003217, *6 (E.D. Pa. Aug. 24, 2001) ("An expert is prohibited from offering his opinion as to the legal obligations of parties under a contract.")

More importantly, Skelly is just wrong. As one example, the Superseding Indictment discusses that . . .

> . . . Contract number W911N2-09-D-0023, for instance, required 8(A) COMPANY 1 to "submit, along with their proposals, technical information as follows: a. Narrative description of the contractor's history, including estimated annual value of completed contract work. *Plan for maintaining in-house capabilities to complete the work, including description of trade skills and associated numbers of personnel and a general listing of types of contractor owned equipment or leasing agreements for service contract work to be used in this contract*" and "e. *Listing of subcontractors proposed for use on this contract, to include their area of specialization, skills, and experience.* This item shall be accompanied by a narrative outlining the expected extent of subcontracting to be employed throughout the contract and the subcontractors anticipated response time to prime contractor's requirements."

Superseding Indictment (Doc. 340), ¶ 72 (emphasis added). This highlights one of the major problems with the Skelly Disclosure. Not only does it cherry-pick the factual record to present a heavily sanitized version of what Defendants purportedly did, but it also risks confusing and misleading the jury by telling it how to interpret the facts, including whether there were misrepresentations or omissions made. The jury does not need an expert to tell them how to read the foregoing paragraph. The

jury can read the foregoing paragraph and review what Defendants disclosed in response, and it can decide for itself whether Defendants were engaged in fraud. Skelly's proposed testimony will be decidedly unhelpful, if not misleading, when it comes to this issue.

Skelly's discussion of "rebadging" raises similar problems. Skelly, like Jordan, seeks to testify as an expert on the concept of "rebadging." Indeed, his disclosure contains some of the very same language as the Jordan Disclosure, including the claim that it was both "common" and "preferred." Again, this is not a case involving so-called "rebadging." Skelly characterizes "rebadging" as the practice of program participants hiring individuals from subcontractors that are already performing work on the job site. Like Jordan, if Skelly is planning to apply that benign characterization to the facts of this case, he must disclose what specific facts he is relying on to reach that conclusion. That will allow the Court to exercise its gatekeeping function to determine whether the "fit" is appropriate between the assumed facts and the proposed testimony. It will also allow the United States to prepare for cross-examination, particularly as it relates to which facts Skelly is taking into consideration and which facts he is not taking into consideration. As the Court is aware,

Davis made numerous specific admissions about the movement of laborers onto her company's payroll, and there will be evidence at trial supporting those admissions. Is Skelly going to weigh those facts in his discussion of rebadging, or is he disregarding them? The Skelly Disclosure does not say. Thus, it appears that Skelly may "render[] an opinion based on factual assumptions not present in the case" or even worse, at odds with the facts of this case. *State Farm Fire and Casualty Co.*, No. 1:23-CV-01661, 2026 WL 881187, *3.

Moreover, even if a contracting officer liked continuity (Ex. 1, p. 3) or the Letterkenny Job Order Contracting Guide counseled against "produc[ing] conflicts with and between existing contractors,"[3] (Ex. 1, p. 5), would a contracting officer be unconcerned to learn that an incoming contractor had no discretion over the persons placed on her payroll or input into how much they were paid, and furthermore lacked the right to

[3] Skelly attempts to stretch this language to suggest that "assignment" of contracts (i.e., the relinquishment of control) was what the Letterkenny Contracting Office actually preferred. (Ex. 1, p. 5.) This again shines a spotlight on the Court's gatekeeping function. If Skelly's interpretations of the Letterkenny Job Order Contracting Guide are indeed accurate and reliable, Defendants can call an actual contracting officer from Letterkenny and examine that person on the Guide. They do not want to do that because they would instead prefer to have an expert say whatever they want, without any way to question that person's interpretations.

control those laborers? These are all facts that "fit" this case because Davis has admitted them and evidence at trial will support them. The Skelly Disclosure, meanwhile, is about an alternate universe. Again, because "expert evidence can be both powerful and quite misleading . . . . the importance of [the] gatekeeping function cannot be overstated." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283 (4th Cir. 2021) (quoting *Daubert*, 509 U.S. at 592).

Next, Federal Rule of Evidence 704(b) provides that, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." As with Jordan, Skelly's "expert" testimony about what "most" owners, operators, employees of participating concerns and subcontractors supposedly knew would mislead the jury and result in unfair prejudice to the United States. It would convey to the jury via expert testimony that Defendants must have acted in good faith without Defendants actually testifying about their state of mind or why they took certain actions. That substitution of Defendants' testimony is impermissible. *See United States v. Korbe*, No. 2:09-CR-00005,

2010 WL 4639042, *3 (W.D. Pa. Nov. 8, 2010) ("[A]n expert opinion cannot be used as a substitute for the Defendant's testimony that she was not aware that police officers had entered her home and / or that he thought she was being invaded by malevolent intruders"); *see also United States v. Rider*, No. 4:20-CR-232, 2022 WL 2813719, *2 (E.D. Tex. July 18, 2022) (excluding expert testimony focused on the defendant's state of mind and character to form the requisite intent because that was "a subject matter that the jury [wa]s capable of evaluating without the assistance of an expert"); *United States v. Ji*, No. 18-CR-611, 2022 WL 3081868, *6 (N.D. Ill. Aug. 3, 2022) (To the extent Defendant seeks to use Clarke to bolster his argument to the jury regarding his intent, beliefs, or emotions, such testimony is undoubtedly unduly prejudicial for two reasons: it not only substitutes a law professor's testimony for that of Defendant, but it in turn also deprives the government of an opportunity to cross-examine Defendant (who may elect not to testify) about his 'intent, interest, or willingness' and the reasons he felt 'scared' and 'threatened'").

## CONCLUSION

For these reasons, the Court should grant the United States' motion *in limine* and exclude Skelly's expert testimony. At the very minimum, the Court should order Defendants to provide a supplemental Rule 16 disclosure for Skelly that complies with its plain requirements.

Respectfully submitted,

BRIAN D. MILLER
United States Attorney

/s/ K. Wesley Mishoe
K. Wesley Mishoe (PA 321983)
Assistant United States Attorney
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Tel: (717) 221-4482
kenneth.mishoe@usdoj.gov

September 4, 2026

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing brief was served on all counsel of record via ECF.

/s/ K. Wesley Mishoe
K. Wesley Mishoe
Assistant United States Attorney

September 4, 2026