**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Docket No. 1:22-cr-00426 |
| | : | |
| SCOTT E. BOONE, | : | (Judge Jennifer P. Wilson) |
| DANIEL E. McGUIRE, | : | |
| | : | (Filed Electronically) |
| Defendants. | : | |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION IN LIMINE TO EXCLUDE REBECCA DAVIS'S PLEA,**
**STATEMENTS, AND UNCHARGED MISCONDUCT**

Defendants Scott E. Boone and Daniel E. McGuire (collectively "Movants"),[1] by and through their undersigned counsel, submit this reply brief in support of their Motion in Limine to Exclude Rebecca Davis's Plea, Statements, and Uncharged Misconduct.

## I. INTRODUCTION

On or about May 21, 2026, Rebecca J. Davis signed a plea agreement, pursuant to which she subsequently entered a guilty plea to Count 1 of the Indictment. [Doc. No. 303]. The plea agreement, at least the version filed on the

[1] Although initially included in the motion as a Movant, co-defendant Thomas E. Laurer entered a plea of guilty on September 14, 2026 and no longer joins in seeking the relief requested herein.

docket, contains no provision for cooperation, and Movants understood that Ms. Davis would not be testifying at trial.[2] Based on this assumption, the accuracy of which the government's brief in opposition [Doc. No. 410, "Response Brief"] confirms, Movants sought to preclude any reference to Ms. Davis's plea, related statements, or unclaimed misconduct [Doc. No. 365]. Until the government's recent filing, Movants were unaware of the government's intention to call Ms. Davis as a witness. The government now states: "the United States anticipates calling Davis to testify in its case in chief." Response Br., 1. The government also advises that if Ms. Davis testifies, the testimony will not be pursuant to a plea agreement-based cooperation obligation, or otherwise voluntary; rather, it will be compelled testimony. Specifically, the government states: "the United States has served Davis with a trial subpoena and may compel her testimony through a grant of immunity if Davis invokes Fifth Amendment protections against self-incrimination." *Id.* at 3.

Clearly, Movants were correct to assume that Ms. Davis's plea agreement does not contain a cooperation obligation, otherwise the government would not need to compel her testimony. If Ms. Davis does testify, the parameters of the instant motion certainly may change. However, the government's brief does

[2] Undersigned counsel understand that plea agreement-based cooperation obligations may not necessarily appear in publicly filed plea agreements.

not provide much guidance concerning the possibilities surrounding the proposed testimony. It is therefore difficult, if not impossible, to reply to the government's brief; it is as of yet unclear whether Ms. Davis will testify, under what circumstances, and pursuant to what motivation. Consequently, some of the issues raised by Movants must now await trial. Nonetheless, Movants reply to the government's brief to the extent the uncertain circumstances allow.

## II. ARGUMENT

### **<u>REPLY POINT 1</u>: IF MS. DAVIS TESTIFIES, DEPENDING ON THE CIRCUMSTANCES, REFERENCE TO A PLEA AGREEMENT SHOULD STILL BE EXCLUDED.**

The government argues that if Ms. Davis testifies, her plea agreement is clearly admissible. In support, the government places great emphasis on *United States v. Universal Rehabilitation Services, Inc.*, 205 F.3d 657 (3d Cir. 2000). This emphasis is misplaced.

Movants concede that when a witness testifies <u>pursuant to a cooperation agreement</u>, under *Universal Rehabilitation*, the witness's plea agreement is affirmatively admissible by the government in its case-in-chief. *Id.* at 667. However, this is not the case here. Instead, it appears that if Ms. Davis testifies at all, it will follow the compulsion of an immunity order which *Universal Rehabilitation* neither governs nor addresses.

In *Universal Rehabilitation*, defendants sought to preclude introduction and affirmative reference to two cooperating witnesses' plea agreements. It was in that context that the Court of Appeals blessed the government's efforts to allow introduction of the plea agreements in the government's case-in-chief. However, if Ms. Davis's testimony is compelled via a grant of immunity without regard to her plea agreement, the existence and terms of her plea agreement have no probative value regarding: to assist the jury in determining her credibility; to eliminate concern about selective prosecution; and to explain her first-hand knowledge of events, all of which are concerns the Court identified in *Universal Rehabilitation*. Instead, the prospective grant of immunity pursuant to which Ms. Davis would testify would become the proper focus of those very same considerations.

As the government notes, in *Universal Rehabilitation,* the Court stated:

> Questions will arise in the minds of the jurors whether the co-conspirator is being prosecuted, <u>why he is testifying, and what he may be getting in return</u>. If jurors know the terms of the plea agreement, these questions will be set to rest and they will be able to evaluate the declarant's motives and credibility . . . . [A]n attack is not always necessary.

205 F.3d at 666 (emphasis added).

This language, which directs focus on plea agreement-based motivations, clearly recognizes the sensibility of the affirmative introduction of Ms. Davis's

plea agreement *if* she is testifying pursuant to the agreement. This does not appear to be the case here. In light of these circumstances, introduction of Ms. Davis's plea agreement will be confusing to the jury. Moreover, at this point, the only purpose of the plea agreement would be to establish the very fact of the plea. In other words, the jury might very well conclude that if Ms. Davis is guilty, Movants are guilty—clearly an impermissible purpose for introducing the plea.

Naturally, if Ms. Davis testifies pursuant to a grant of immunity and Movants elect to impeach her with her plea agreement (which is quite unlikely), the plea agreement would become fair game. Unless and until that happens, however, the government should not be permitted to introduce Ms. Davis's plea agreement because she will not be testifying pursuant to it.

**<u>REPLY POINT 2</u>: MOVANTS DO NOT DISAGREE THAT A LIMITED DEFERRAL OF THEIR MOTION IS APPROPRIATE IN LIGHT OF THE UNCERTAINTY CONCERNING MS. DAVIS' S TESTIMONY.**

In its brief in opposition, the government suggests the Court defer ruling on whether Ms. Davis's prior statements to law enforcement are admissible. *See* Response Br. 10, 11.[3] Here, the government essentially concedes that if Ms.

[3] In addition to the factual statements made or adopted at her recent guilty plea, Ms. Davis was interviewed by federal authorities on at least three occasions.

Davis does not testify, her prior statements are not admissible, at least by the government in its case-in-chief.[4]

Movants do not disagree with the sensibility of deferral, especially to the effect that Ms. Davis's prior statements bear on her testimony. However, through another motion in limine, Movants have sought to preclude the government's regulatory expert John Klein's reliance on and recitation of the factual basis of Ms. Davis's plea. [Doc. No. 366]. Whether Mr. Klein may rely upon or testify about the facts supporting Ms. Davis's plea does not require knowing whether, and pursuant to what conditions, Ms. Davis may testify. Even if she testifies, Mr. Klein may not rely upon and recount the factual basis supporting Ms. Davis's guilty plea. The hearsay character of that specific prior statement, and its proffered impermissible use, does not change simply because Ms. Davis may testify. If Ms. Davis testifies, Mr. Klein can certainly rely upon her trial testimony, as could any expert.

[4] Movants, in theory, could potentially seek to introduce portions of her early statements under Fed. R. Evid. 806 to impeach any co-conspirator desecrations with which they might be inconsistent.

**<u>REPLY POINT 3</u>: EVIDENCE OF MS. DAVIS'S VIOLATION OF THE SBA 8(a) ONE-TIME ELIGIBILITY RULE IS NOT AN ACT IN FURTHERANCE OF THE CONSPIRACY ALLEGED, AND IF IT IS, SINCE SHE HAS PLED GUILTY, AND SINCE MESSRS. BOONE AND McGUIRE HAD NO KNOWLEDGE OF THE VIOLATION, ITS MINIMAL PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY ITS PREJUDICIAL EFFECT.**

Movants have sought to preclude evidence of Ms. Davis's violation of the 8(a) program's one-time eligibility rule. In its brief in opposition, the government invokes black letter law governing the admissibility of statements and acts of coconspirators. *See* Response Br., 12 - 15. In essence, the government suggests that Ms. Davis's violation of the one-time eligibility rule itself constitutes an act in furtherance of the charged conspiracy. Invocation of these principles is misplaced.

First, Ms. Davis's historical violation of the one-time eligibility rule predates by seven years the charged conspiracy which is alleged to have commenced in or about 2007. Ms. Davis submitted Elstner Construction Company's 8(a) application to participate in the SBA 8(a) Program sometime before the company was accepted into the program in October 2001.

The government suggests that this admittedly patent ineligibility was nonetheless in furtherance of the conspiracy because in 2007 and 2008, Ms. Davis submitted annual updates to the SBA confirming Elstner's eligibility. The allegations related to this are set forth in Count 1 of the Superseding Indictment

at ¶¶ 89 and 91. However, the Superseding Indictment makes no reference to Ms. Davis's violation of the one-time eligibility rule. In fact, the Superseding Indictment specifically pleads Elstner's ineligibility due to a lack of control because in those very same annual updates, Ms. Davis did not inform the SBA about an earlier Assignment of Authority letter. *See* Superseding Indictment, ¶¶ 90 and 92.[5] Considering this, it is difficult to see how Ms. Davis's 2001 violation of the one-time eligibility rule, of which Movants were not aware, can be in furtherance of the charged conspiracy, the gravamen of which concerns violations of the SBA's control and self-performance regulations. Stated otherwise, Ms. Davis's violation of the one-time eligibility rule that occurred long before the alleged conspiracy commenced is simply not relevant, largely because she will not be on trial.

The optional language in the Third Circuit's Model Jury Instructions on this subject of "Acts and Statements of Co-Conspirators" support Movants' position. Specifically, the Model Instructions suggest the following:

> Acts done or statements made by an alleged co-conspirator before (name) joined the alleged conspiracy may also be considered by you as evidence against (name). <u>However, acts done or statements</u>

[5] The Amended Bill of Particulars does reference Ms. Davis's violation of the one-time eligibility rule, but for some reason (likely because it was not presented to the grand jury that returned the Superseding Indictment), the allegation does not appear in the Superseding Indictment itself.

> made before the alleged conspiracy began or after it ended may only be considered by you as evidence against the person who performed that act or made that statement.

Third Circuit Model Crim. Jury Instr. § 6.18.371K (2026)(emphasis added).

Second, even if Ms. Davis's 2001 violation of the one-time eligibility rule could be resurrected and revisited by reference to the subsequent annual updates (she authored) to somehow constitute "in furtherance of a conspiracy," where the charged conspiracy centers on control and self-performance, Ms. Davis has pled guilty and the Movants had no knowledge of Elstner's ineligibility to participate in the SBA 8(a) Program. Thus, Ms. Davis's violation under the rules of that program has little probative value in the case as postured, and is substantially outweighed by the considerations laid in Federal Rule of Evidence 403. Certainly, introduction of Ms. Davis's 2001 violation would unfairly prejudice Movants in light of the fact that the Court would naturally instruct the jury that the act of one coconspirator can be attributed to all coconspirators. Such attribution would be highly prejudicial because Movants had no awareness of the violation, and the jury would hear evidence of a violation that relates to someone not on trial. This would also likely mislead and confuse the jury. Additionally, introduction of this evidence could lead to

significant delay and waste of time since Movants would then be required to present evidence of their lack of awareness of Ms. Davis's violation. Such additional evidence would be distracting and potentially time consuming.[6]

## III. CONCLUSION

For all of the above reasons, this Court should grant Movants' motion, except to the extent that portions of it require deferral pending whether, and to what extent, Ms. Davis testifies.

Dated: September 28, 2026

Respectfully submitted:

*/s/ Mark. E. Cedrone*
Mark E. Cedrone, Esquire
PA I.D. No. 45549
SAXTON & STUMP
123 S. Broad Street, Suite 2800
Philadelphia, PA 19109
(267) 665-2080
mec@saxtonstump.com

---

[6] Should the Court conclude that Ms. Davis's violation of the one-time eligibility rule is admissible, Movants might be willing to stipulate that for reasons unknown to them, other than the lack of control issues alleged in the Indictment, Elstner was in fact not eligible to participate in the SBA 8(a) program. However, such a stipulation serves no valid evidentiary purpose given the structure of the charges.

*/s/ Lisa A. Mathewson*
Lisa A. Mathewson, Esquire
PA I.D. No. 77137
MATHEWSON LAW LLC
1617 JFK Boulevard, Suite 2027
Philadelphia, PA 19103
(215) 339-9592
*lisa.mathewson@mathewson-law.com*

*Attorneys for Defendant*
*Scott E. Boone*

*/s/ Efrem M. Grail*
Efrem M. Grail, Esquire
PA I.D. No. 81570
*/s/ Julia M. Gitelman*
Julia M. Gitelman, Esquire
THE GRAIL LAW FIRM
429 Boulevard of the Allies
Suite 500
Pittsburgh, PA 15219
(412) 332-9101
*egrail@graillaw.com*
*jgitelman@graillaw.com*

*Attorneys for Defendant*
*Daniel E. McGuire*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served, this 28th day of September, 2026, via the Court's Electronic Case Filing ("ECF") System, upon all counsel of record.

*/s/ Mark E. Cedrone*
MARK E. CEDRONE, ESQ.